**WESTERN EQUITIES, LTD. AND UNDERWRITERS AT LLOYD'S, LONDON and CERTAIN INSURANCE COMPANIES SUBSCRIBING TO COVER NOTES 93B1/043 and 92B40/009, Plaintiffs**

v.

**HANSEATIC, LTD., in personam, and M/V PARI, her engines, tackle, gear, and all appurtenances, in rem, Defendants.**

Civ. No. 1994-182

District Court of the Virgin Islands

Div. of St. Thomas and St. John

February 14, 1997

460

GREGORY HODGES, ESQ., (Law House), *for Plaintiff*

WARREN B. COLE, ESQ., (Hunter, Colianni, Cole & Turner), *for Defendant*

MOORE, *Chief Judge*

### MEMORANDUM OPINION

Defendants have filed a motion to dismiss for lack of personal jurisdiction. For the reasons set forth in this memorandum, this motion will be granted.

## I. Facts

Plaintiff Western Equities, Ltd. ["Western Equities"] is a Channel Islands corporation and the owner of the M/V INTREPID II, a yacht of British Registry bearing Official No. 713409. M/V IN-TREPID II is a 168-foot luxury yacht that charters for approximately $ 20,000.00 per day. Plaintiffs Underwriters at Lloyd's, London and Certain Insurance Companies Subscribing to Cover Notes 93B1/043 and 92B40/009 ["Underwriters"] provided hull insurance for M/V INTREPID II. Defendant Hanseatic Ltd. ["Hanseatic"] is a Channel Islands corporation and is the owner of the M/V PARI (formerly known as f/k/a Alshain) ["M/V/PARI"], a 114-foot steel luxury yacht of British Registry manufactured in 1989. Plaintiffs assert that M/V PARI may come within the waters of the District of the Virgin Islands during the pendency of this action.

On December 13, 1992, the M/V INTREPID II was at anchor in Falmouth Harbor, Antigua, West Indies. While at anchor, M/V INTREPID II was allegedly rammed and damaged three times, twice on the starboard side and once on the port side, by an unmanned tender from M/V PARI.

461

As a result of the damage caused to M/V INTREPID II, plaintiffs allege they possess a maritime tort lien against M/V PARI. The damages alleged include hull damage of $79,049.88,[1] and lost revenue of at least $537,091.00 while M/V INTREPID II was removed from service and repaired.

On December 12, 1994, plaintiffs filed a complaint against defendants requesting

(a) the issuance of a warrant for the arrest of M/V PARI;

(b) judgment in favor of Western Equities and against Hanseatic, in personam, and M/V PARI, in rem, for the $40,000.00 deductible plus lost revenues and related costs of at least $537,091.00, plus interest, costs and reasonable attorneys' fees;[2]

(c) judgment in favor of Underwriters and against Hanseatic, *in personam*, and M/V PARI, *in rem*, for hull damages in the amount of $78,409.88, plus interest, costs and reasonable attorneys' fees;

(d) judgment declaring that Western Equities and Underwriters have valid and existing maritime tort liens upon M/V PARI senior and superior to all other interests, liens, or claims whatsoever;

(e) judgment that M/V PARI be condemned and sold to pay and satisfy said judgment in full; and

(f) any other relief the Court deems just and proper. Subsequently on August 4, 1995, defendants moved to dismiss the complaint for lack of personal jurisdiction over Hanseatic. Further discovery was required to determine whether sufficient contacts existed to allow the Court to exercise personal jurisdiction over Hanseatic.

---

[1] Underwriters paid Western Equities' hull damage claim in the amount of $78,049.88, less the policy's $40,000.00 deductible. Accordingly, Underwriters is subrogated to the rights of Western Equities to the extent of that portion of the claim.

[2] The only asset of Hanseatic, Ltd. is the vessel M/V PARI. See Defendants' Motion to Dismiss at 4.

After a lengthy discovery process, the Court now has sufficient facts to rule on Hanseatic's motion.

## II. Discussion

■ Defendants have filed a motion to dismiss, alleging that this Court lacks jurisdiction over either Hanseatic or the M/V PARI. Plaintiffs allege that jurisdiction is proper under the "federal long-arm statute" as recently revised in 1993. Rule 4(k)(2) of the Federal Rules of Civil Procedure states, in pertinent part:

> If the exercise of jurisdiction is consistent with the Constitution and the law of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

A precondition to invoking the federal long-arm statute is that the defendant cannot be subject to the personal jurisdiction of any State. Once this prerequisite is met, Rule 4(k)(2) fills the gap and provides a plaintiff with the mechanism to obtain personal jurisdiction in a federal court over a foreign defendant who has sufficient contacts with the United States as a whole to satisfy due process requirements under the law and Constitution of the United States. *See Eskofot A/S v. E.I. du Pont de Nemours & Co.*, 872 F. Supp. 81, 87 (S.D.N.Y. 1995). The claim asserted by plaintiff must also be one "arising under federal law," which is the core of the controversy raised by defendants' motion to dismiss.

The parties are agreed that the defendants are not subject to the jurisdiction of any court of general jurisdiction of any State. The defendants have asserted, and plaintiffs have not contested, that defendants have not systematically conducted business in any of the Fifty States or in any United States possession or territory. (Defendants' Responses to Plaintiffs' First Set of Interrogatories, paragraphs 8 & 9; Plaintiffs' Opposition to Motion to Dismiss for Lack of Personal Jurisdiction, Exhibit A). Moreover, plaintiffs' claims sound in the admiralty and maritime jurisdiction of this Court. (Complaint, ¶¶ 1,2; defendants' answer, ¶¶ 1,2). The issues

thus before the Court are (1) whether such admiralty and maritime claims are "claims arising under federal law" as required by Rule 4(k)(2), and (2) if so, whether defendants have sufficient contacts with the United States as a whole to justify this Court's exercise of jurisdiction over defendants under the Due Process Clause.[3]

## A. "Claims Arising under Federal Law"

■ Whether "claims arising under federal law", as used in Rule 4(k)(2), includes federal admiralty and maritime claims, is a matter of first impression for this Court, and indeed for the United States Court of Appeals for the Third Circuit. We reject the defendants' argument that the rule's language restricting claims to those based on federal law further restricts such claims to those raising only federal questions. The plain language of the rule, read as a whole, states that it applies to claims brought under federal law in the broad, substantive, generic sense. If the writers of Rule 4(k)(2) had wanted to restrict its applicability to "claims raising federal questions", they knew full well how to insert that language. The notes of the Advisory Committee fully support this conclusion, describing, for example, the claims which are included in this exercise of territorial Personal jurisdiction as "arising under *any* federal law," not "claims raising any federal question". (Emphasis added).

Four out of the five district court opinions available at the writing of this opinion which have considered the issue are in accord with this conclusion, and the fifth has been reversed on appeal.[4]

---

[3] The Due Process Clause has been made applicable to the Virgin Islands by Revised Organic Act of 1954 § 3; 48 U.S.C. § 1561. The Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995), *reprinted in* V.I. CODE ANN., Historical Documents, pp. 73-177, preceding Title I (codified as amended) (1995) ["Revised Organic Act"].

[4] *See, e.g., United Trading Company, S.A. v. M.V. Sakura Reefer*, No. 95 Civ. 2846 SAS, 1996 WL 374154, at *4 (S.D.N.Y. July 2, 1996) (clear holding that Rule 4(k)(2) is applicable in admiralty and maritime claims); *In re Matter of Libel and Petition of Gemini Navigation, S.A.*, No. CIV. A. G-92-126, 1996 WL 544236, at *4 n. 10 (S.D. Tex. Mar. 1, 1996) (even if Texas long-arm statute had not applied to the particular admiralty action, Rule 4(k)(2) would have allowed the exercise of personal jurisdiction); *Nissho Iwai Corporation v. M/V Star Sapphire*, No. CIV. A. H-94-1599, 1995 WL 847172, at *3 (S.D. Texas Aug. 24, 1995) (court applied Rule 4(k)(2) to determine if personal jurisdiction existed over admiralty claims); *Pacific Employers Insurance Company v. M.T. Iver Champion*, Civ.A. No. 91-0911,

In their reply to plaintiffs' opposition, filed on December 10, 1996, defendants urged the Court to adopt what they assert is the better rule of law used in *World Tanker Carriers Corp. V. MV Ya Mawlaya*, Nos. Civ.A. 94-4190, Civ.A. 95-0396, Civ.A. 95-0511, Civ.A. 95-1151 and Civ.A. 95-3295, 1996 WL 20874 (E.D. La. Jan. 18, 1996), apparently unaware that the district court opinion had been reversed on November 14, 1996, almost a month earlier in *World Tanker Carriers Corp. V. MV Ya Mawlaya*, 99 F.3d 717 (5th Cir. 1996).[5]

---

1995 WL 295293 (E.D. La. May 11, 1995) (Rule 4(k)(2) applied to admiralty and maritime claims without specifically addressing its applicability); *contra, World Tanker Carriers Corp. v. MV Ya Mawlaya*, Nos. Civ.A. 94-4190, Civ.A. 95-0396, Civ.A. 95-0511, Civ.A. 95-1151 and Civ.A. 95-3295, 1996 WL 20874 (E.D. La. Jan. 18, 1996) (Rule 4(k)(2) applied only to federal question claims and did not include admiralty cases), *rev'd*, 99 F.3d 717 (5th Cir. 1996) ("arising under federal law" means any federal law, not just federal question claims).

[5] The standard for submissions to the Court is set forth in Rule 11(b) of the Federal Rules of Civil Procedure:

> By presenting to the Court . . . a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . .

> (2) the claims, defenses, and other legal contentions therein are warranted by existing law . . . .

Additionally, Rule 11.2 of the Local Rules of Civil Procedure for the District Court of the Virgin Islands states:

> By signing a pleading, an attorney certifies to the court that:

> (a) the applicable law in this jurisdiction has been cited, including authority for and against the position being advocated by counsel . . .

Much of defendants' arguments were based on a case which had been overruled almost four weeks before the defendants submitted their reply. While four weeks is not an extended period of time, it certainly was sufficient to perform a Westlaw or Lexis search to determine the status of the precedent relied on by defendants. Moreover, both parties obviously used electronic research in preparing their pleadings, as several cases they cited were not yet available in the federal reporters. We do not criticize plaintiffs for not discovering that the Court of Appeals for the Fifth Circuit had overruled the district court in World Tanker Carriers Corp. v. MV Ya Mawlaya, since the decision was issued only one day before plaintiffs filed their opposition. There was nothing, however, to preclude plaintiffs from supplementing their brief to advise this Court of the reversal, especially since their counsel was clearly aware of it at the time of the hearing. That counsel for defendants, on the other hand, was unaware of the Court of Appeals reversal until the Court mentioned it at oral argument is just as clear. The failure of both defendants and plaintiffs to advise the court of such a pertinent decision before the oral argument on December 20, 1996 borders on sanctionable conduct. The Court emphasizes that it does not condone conduct by counsel which reflects careless legal research at best.

Based on its own reading of the rule, and the similar reasoning used in the currently unanimous body of case law on point, this Court holds that Rule 4(k)(2) encompasses admiralty and maritime claims.

## B. Defendants' Contacts With the United States

As already pointed out, it is undisputed that the defendants lack sufficient contacts to be subject to jurisdiction of the courts of general jurisdiction of any state or territory. The issue remaining is whether the plaintiffs have established that defendants have "sufficient contacts with the nation as a whole to justify the imposition of *United States' law* . . . ." *World Tanker Carriers Corp.*, 99 F.3d at 720.

### 1. *Visits by M/V Pari to the United States*

The plaintiffs have filed documents supplied in discovery by defendants which show the following visits to the United States:

| | |
|---|---|
| 01/01/89 | M/V PARI departs from Palorimos, Puerto Rico |
| 01/01/90 | M/V PARI arrives in Palorimos, Puerto Rico |
| 01/01/90 | M/V PARI departs from Palorimos, Puerto Rico |
| 01/25/90 | M/V PARI arrives in Ft. Lauderdale, Florida |
| 04/10/90 | M/V PARI departs from Ft. Lauderdale; arrives in Palm Beach, Florida |
| 04/12/90 | M/V PARI departs from Palm Beach, Florida |
| 04/16/90 | M/V PARI departs from Fort Pierce, Florida |
| 05/02/90 to 12/16/92 | No documents produced; whereabouts of M/V PARI unknown |
| 03/07/93 | M/V PARI arrives in Frederiksted, St. Croix |
| 03/08/93 | M/V PARI departs Frederiksted for Ft. Lauderdale (en route, M/V PARI is boarded by U.S. Coast Guard Cutter "Tampa") |
| 03/11/93 | M/V PARI arrives in Ft. Lauderdale |

03/12/93
to
03/21/93    M/V PARI docked in Ft. Lauderdale
03/22/93    M/V PARI departs Ft. Lauderdale for Nassau, Bahamas
04/09/93    M/V PARI arrives in Ft. Lauderdale
04/09/93    M/V PARI departs Ft. Lauderdale

Additionally, Defendants have admitted various contacts and visits to the United States, although they claim not to be able to produce the dates of each port call.[6]

2. *Defendants Attempts to Sell the M/V PARI Through a Broker in the United States*

Defendants deny that they ever attempted to sell the M/V PARI through a yacht broker in the United States.[7] However, plaintiffs have supplied documentation that the M/V PARI was listed for sale through the Palm Beach, Florida office of Camper & Nicholsons, Yacht Brokers at the precise time that defendants were answering plaintiffs' interrogatories.[8]

3. *Defendants have Advertised a Charter Service for M/V PARI in Magazines in General Circulation in the United States*

Defendants have admitted to advertising for charter the M/V PARI in *Boating International and Showboats*. Plaintiffs have submitted evidence that this magazine is in circulation in the United States. Thus, defendants have advertised the M/V PARI as available for charter in magazines in general circulation in the United States.

---

[6] *See* plaintiffs' Interrogatory 4, 10.

[7] *See* plaintiffs' Interrogatory 11.

[8] *See* plaintiffs' Exhibit E, Opposition to Motion to Dismiss for Lack of Personal Jurisdiction. During oral argument, defendants represented that their contact with the international firm of Camper & Nicholsons occurred in London. Defendants did not dispute the fact that the M/V PARI may have been listed by the Florida office of Camper and Nicholsons, but rather took the position that such a listing was a result of Camper & Nicholsons' use of its international database and network and did not evidence contact between defendants and Camper & Nicholsons' Florida office.

### 4. *Defendants have Solicited Yacht Brokers in the United States to Arrange Potential Charter Parties*

Defendants have admitted that it is likely that brochures, pamphlets, and the like were distributed to brokers in the United States. However, defendants have stated that they are unable to provide definitive information in this regard. Drawing all inferences in the favor of the non-moving party, the Court must presume for the purposes of this motion that defendants have solicited potential charters through brokers in the United States.

### 5. *The Weight of the Defendants' Contacts*

■ A widely adopted test for the sufficiency of minimum contacts for general jurisdiction to exercise personal jurisdiction under Rule 4(k)(2) identifies the following factors:

(1) transacting business in the United States; or

(2) doing an act in the United States; or

(3) having an effect in the United States by an act done elsewhere.

*See Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 87 (S.D.N.Y. 1995), *citing Leasco Data Processing Corp. v. Maxwell*, 468 F.2d 1326, 1340 (2d Cir. 1972).

The determination of transacting business in the United States is one which the courts have construed somewhat narrowly. The Supreme Court explained that "if, to serve some immediate interest, the courts . . . were to exploit every such contact to the limit of its power, it is not difficult to see that a multiplicity of conflicting and overlapping burdens would blight international carriage by sea." *Lauritzen v. Larsen*, 345 U.S. 571, 581, 97 L. Ed. 1254, 73 S. Ct. 921 (1953). In order to determine whether a non-resident defendant has transacted business sufficient to allow exercise of jurisdiction under the federal long-arm statute, a court must determine whether the defendant has engaged in purposeful activity in the United States, thus invoking the benefits and protection of United States' law. *See, United Trading Company, S.A. v. M.V. Sakura Reefer*, 1996 U.S. Dist. LEXIS 9190, 1996 WL 374154 at *4, No. 95 Civ. 2846 SAS (S.D.N.Y. 1996).

468

Plaintiffs have not satisfied the first factor by failing to present any evidence that defendants transacted any business in the United States at all, much less in the systematic and continuous manner needed to allow the Court to exercise personal jurisdiction. Plaintiffs have shown several instances in which defendants' boat stopped at U.S. ports, but there is no evidence that these stops were made to conduct business in the United States, or with United Sates citizens. The M/V PARI is a luxury charter, the stops of which are often determined by its clients, as opposed to crew or the owners. The fact that the M/V PARI has stopped in U.S. territory therefore is not sufficient to show that defendants conducted business here or justify the exercise of personal jurisdiction. *American Telephone & Telegraph v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 590 n.6 (9th Cir. 1996).

The other "contacts" cited by plaintiffs are also legally insufficient to meet the requirements for the exercise of jurisdiction. The fact that the defendants' boat was advertised through U.S. brokers for charter and for sale in the United States does not prove that defendants conducted any business in the United States. At most it shows that defendants may have been testing the United States' market. There is no evidence, or even a claim, that any financial transactions took place in the United States relating to the defendants.[9] The plaintiffs have not claimed that the defendants' employees even set foot in U.S. territory, nor that they themselves ever attempted to transact business in the United States. As there is no evidence, or even allegation, that the defendant conducted any actual financial transactions in the United States, it cannot be said that they transacted business in the United States.

The act which the foreign defendants allegedly performed was done in Antigua, so the second factor has no relevance here.

The third factor also does not support the Court exercising jurisdiction over defendants in this case. There has been no

---

[9] *See, United Trading Company, S.A. v. M.V. Sakura Reefer*, 1996 No. 95 Civ. 2846 SAS, 1996 WL 374154, at *4 (existence of bank account, without evidence of actual financial transactions, insufficient to support a finding of jurisdiction); *compare Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 87 (S.D.N.Y. 1995) (jurisdiction was proper upon finding that defendants personally marketed products in United States through employees acting within United States to sell that product).

allegation raised that the actions giving rise to this case will have any effect in the United States. Both of the corporations involved are foreign corporations. There is no evidence that the commerce of the United States will be affected, either in terms of competition between business rivals or in terms of cash flows in the United States. *See, e.g., Eskofot A/S v. E.I. Du Pont De Nemours & Co.,* 872 F. Supp. 81, 87 (S.D.N.Y. 1995). There is no evidence that any United States entity will be affected in any way. Moreover, even if some effect could be found, it would hardly be foreseeable that the defendants should expect to answer for such effect in the courts of the United States. *See, e.g., SEC v. Unifund SAL,* 910 F.2d 1028, 1033 (2d Cir. 1990). Absent such an effect in the United States, personal jurisdiction over defendants is not proper.

■ Plaintiffs have asked the Court to find that the defendants have systematically conducted business in the United States based upon the contacts already shown, and upon the failure of defendants to produce log book number one of the M/V PARI, which accounts for the time from May 2, 1990 to December 16, 1992. We agree that all disputes of fact are resolved in favor of the non-moving party in deciding a motion to dismiss on jurisdictional grounds. *Hershey Pasta Group v. Vitelli-Elvea Co., Inc.,* 921 F. Supp. 1344, 1346 (M.D.Pa. 1996). This would include drawing all proper inferences in favor of plaintiffs. There is no basis, however, for the Court to draw the inference that more substantial contacts would have been proven by the materials which the defendants were unable to provide to the plaintiffs. Drawing such an inference against a non-producing party is only proper when the non-production was done in bad faith.[10] Here, the Magistrate Judge ruled that the defendants have sufficiently responded to all dis-

---

[10] *See, e.g., National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 640, 49 L. Ed. 2d 747, 96 S. Ct. 2778 (1976) (quoting Societe Internationale v. Rogers, 357 U.S. 197, 212, 2 L. Ed. 2d 1255, 78 S. Ct. 1087 (1958)); *Marquis Theatre Corp. v. Condado Mini Cinema,* 846 F.2d 86, 89 (1st Cir. 1988); *Alexander v. National Farmers Org.,* 687 F.2d 1173 (8th Cir.1982), *cert. denied,* 461 U.S. 937, 938, 77 L. Ed. 2d 313, 103 S. Ct. 2108 (1983); *Quality Prefabrications, Inc. v. Daniel J. Keating Company,* 675 F.2d 77, 80 (3d Cir. 1982); *Labadie Coal Company v. Black,* 217 U.S. App. D.C. 239, 672 F.2d 92, 95 (2d Cir. 1982); *In Re Grace Line, Inc.,* 517 F.2d 404, 409 (2d Cir. 1975); *National Association of Radiation Survivors v. Turnage,* 115 F.R.D. 543, 557 (N.D. Cal. 1987); *Cecil Corley Motor Co. v. General Motors Corp.,* 380 F. Supp. 819, 859 (M.D.Tenn.1974).

covery requests to the best of their abilities. (See Order of the Magistrate Judge, September 24, 1996). Hence the Court finds that the defendants have acted in good faith in their unsuccessful attempts to produce the requested documents and an adverse inference for such non-production is unwarranted.

## III. Conclusion

■ It is undisputed that defendants are not subject to the jurisdiction of any courts of general jurisdiction of the United States. Under Rule 4(k)(2) of the Federal Rules of Civil Procedure, personal jurisdiction may be established over claims arising under federal law if the defendants maintain sufficient contacts with the United States. This admiralty and maritime claim arises under federal law. Plaintiffs have failed to show that the defendants have had significant contacts with the United States to justify such personal jurisdiction in this case. Drawing all factual inferences and construing all facts in the favor of the non-moving plaintiffs, the Court concludes that the exercise of personal jurisdiction over the defendants is not permissible under the Due Process Clause. All that has been shown by plaintiffs is that the M/V PARI made several stops at U.S. ports, and that defendants had some contact with brokers who do business in the United States. Further, plaintiffs have failed to show that the United States will be affected in any way by this case, especially since both parties are foreign corporations. Considering the lack of contacts between the United States and the defendants, the Court will not exercise personal jurisdiction over defendants. Accordingly, defendants' motion to dismiss will be granted.

ENTERED this 14th day of February, 1997.

### ORDER

Defendants have filed a motion to dismiss for lack of personal jurisdiction. For the reasons set forth in the accompanying Memorandum, it is hereby

ORDERED that defendants' motion to dismiss is GRANTED, and this case is CLOSED.

ENTERED this 14th day of February, 1997.