**UNITED STATES OF AMERICA, Plaintiff**

**v.**

**OFFSHORE MARINE LTD., ROBERT AWERBACH, RANDALL HARFORD, GEORGE BOVELL, STATIA TERMINALS, INC., and STATIA TERMINALS N.V., in personam, and the tug INVADER, in rem, Defendants**

Civ. No. 1994-40

District Court of the Virgin Islands

Div. of St. Thomas and St. John

April 16, 1998

JAMES CARROLL, III, ESQ., (Ass't United States Attn'y), *for Plaintiff*

JOHN H. BENHAM, ESQ., (Watts and Benham, P.C.), *for Defendants Statia Terminals, Inc., and Statia Terminals N.V., in personam, and the tug Invader, in rem*

MOORE, *Chief Judge*

## MEMORANDUM

██ This matter is before the Court on motion of defendant Statia Terminals N.V. ["STNV"] to dismiss plaintiff's complaint for want of personal jurisdiction. The Court has general civil jurisdiction equivalent with that of a district court of the United States under Revised Organic Act of 1954 § 22, 48 U.S.C. § 1612.[1] Because the United States appears in this litigation as plaintiff, the Court has original jurisdiction pursuant to 28 U.S.C. § 1345.[2]

For reasons set forth below, the motion to dismiss will be granted.

## I. Facts

Defendant STNV is a corporation organized and existing under the laws of the Netherlands Antilles and operates an oil terminal facility located on the island of St. Eustatius. On March 6, 1991, the tanker barge VISTABELLA towed by the tug INVADER, both vessels bearing the flag of Trinidad and Tobago, called at STNV's terminal. The barge accepted a load of No. 6 fuel oil and departed the facility at about 10:45 a.m.

Later that same day the barge, still under tow by INVADER, sank in the Carribean Sea some thirteen miles from St. Kitts. Subsequent to the sinking, oil from the barge escaped and, eventually, entered the territorial waters of the United States where some of it washed ashore in the Virgin Islands and Puerto Rico. The United States Coast Guard was ultimately required to oversee the cleanup at an alleged cost to the taxpayers of some $3.6 million. Clean-up and removal of the oil were completed on May 15, 1991.

The United States brought the instant suit by complaint filed April 6, 1994. In part, it charges the defendants with negligence under the general maritime law, violations of the Rivers and Harbors Act as well as violations of the federal Oil Pollution Act, 33 U.S.C. §§ 2701 et. seq. Specifically with regard to STNV, the

---

[1] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1994), *reprinted in* V.I. Code Ann., Historical Documents, Organic Acts, and U.S. Constitution at 73-177 (1995 & Supp. 1997) (preceding V.I. Code Ann. tit. 1).

[2] "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."

United States asserts negligence in loading the VISTABELLA which caused or contributed to the sinking of the oil laden barge.

Defendant STNV filed the instant motion on October 14, 1994. Subsequently, extensive discovery limited to the period April 6, 1990, through April 6, 1995, was undertaken on the issue of personal jurisdiction. Final pleadings on the motion were filed March 20, 1997, and a hearing held on the motion five days later.

## II. Analysis of Law and Fact

The United States has asserted two bases of personal jurisdiction. First, it claims STNV is amenable to the jurisdiction of this Court under the Virgin Islands long-arm statute, V.I. CODE ANN. tit. 5, § 4903.[3] Second, it claims in the alternative that STNV is subject to personal jurisdiction in this action under general federal practice, FED. R. CIV. P. 4(k)(2). The Court will address these claims *in seratim.*

### A. Jurisdiction Under the Virgin Islands Long-Arm Statute

■ The starting point for any analysis of this kind is the text of the applicable statute:

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's

(1) transacting any business in this territory;

(2) contracting to supply services or things in this territory;

(3) causing tortious injury by an act or omission in this territory; [or,]

(4) causing tortious injury in this territory by an act or omission outside the territory *if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory. . . .*

---

[3] FED. R. CIV. P. 4(k)(1)(A) permits a federal court to obtain jurisdiction over a defendant who could be subjected to the jurisdiction of a court of general jurisdiction in the state [or territory] in which the district court is located.

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

5 V.I.C. § 4903 (emphasis added).[4] Since the tortious conduct here charged to STNV arose from acts taken outside the territory, section 4903(a)(4) can provide personal jurisdiction over STNV.

The United States has raised several allegations that STNV has transacted business in this territory, and STNV concedes it has done so. From 1990 through 1995, thirteen ships listing their next port of call as the Virgin Islands loaded cargo out of some 3900 at STNV's terminal facility on St. Eustatius. Seventy-eight such vessels called on the terminal to refuel. STNV had conducted operations in the Virgin Islands through a sister corporation, Statia Terminals Virgin Islands Corporation ["STVI"], which ceased operations in 1988. Finally, STNV makes occasional spot purchases of fuel oil from Hess Oil of the Virgin Islands, e.g. eleven invoices were produced for oil purchases over the relevant period, and building supplies from a distributor located in the Virgin Islands.

■ The Court finds, however, that plaintiff has failed to establish that STNV regularly does business in the Virgin Islands. Only eighty-eight vessels with ties to the Virgin Islands have taken fuel from STNV's docks over the relevant period, out of approximately 3900 ship calls. Total transactions with even this remote connection to the Virgin Islands, thus, constitute only about two and one-quarter percent of STNV's relevant transactions over five years. These transactions have only the barest connection to the Territory, since the ship's listing of the Virgin Islands as its next port of call is only of call is only slight evidence that the fuel taken on in St. Eustatius was actually destined for this Territory. In the end, however, plaintiff's claimed jurisdiction over STNV fails because providing fuel to vessels at a terminal in the Netherlands Antillies as a matter of law does not constitute doing business in the Virgin Islands, even assuming the ship being fueled is registered in the Virgin Islands or intends to call next upon a port in the Virgin Islands.

---

[4] A "person" under this section includes corporate persons such as STNV. 5 V.I.C. § 4901.

The United States has similarly failed to show that STNV uses or consumes goods or provides services in the Territory of the Virgin Islands, much less that it derives substantial revenue from such activity. Lastly, eleven purchases of oil over a five year period is hardly the kind of persistent activity which would otherwise establish personal jurisdiction over the defendant.

Because it has failed to establish the statutorily required contacts with the Territory, the United States has not established personal jurisdiction over STNV under the Virgin Islands long-arm statute.

*B. Jurisdiction Under FED. R. CIV. P. 4(k)(2)*

█ The United States and STNV have raised two ancillary issues which must be addressed before the Court can fairly analyze whether RULE 4(k)(2) ["the rule"] permits personal jurisdiction in this case. First, STNV inquires whether the rule applies in admiralty cases. This the Court quickly answers in the affirmative.

Second, while the United States concedes it has not come forward with evidence that STNV is not subject to personal jurisdiction in any state, plaintiff suggests that STNV, and not the plaintiff bears the burden of proof on this issue. This the Court answers resoundingly in the negative. The United States' request for additional jurisdictional discovery is denied.[5]

Because it finds the United States has not met its burden to prove STNV is not subject to service of process in any state, the Court need not decide whether RULE 4(k)(2) could provide the basis for obtaining personal jurisdiction over STNV.

1. Applicability of FED. R. CIV. P. 4(k)(2) in Admiralty

█ STNV has interposed objection to the application of the rule claiming that, in as much as this action sounds in the general admiralty and maritime jurisdiction of the Court, it does not "arise under federal law" as required by the FED. R. CIV. P. 4(k)(2). It has been debated in the courts and is now resolved that general

---

[5] *See*, Plaintiff's Supplemental Response to Motion to Dismiss at 6 ("If, however, this court holds that it is indeed the plaintiff's additional burden under RULE 4(k)(2) to provide sufficient evidence to prove STNV's lack of amenability to jurisdiction of each and every state, territory or commonwealth with the United States, the United States respectfully requests that jurisdictional discovery continue and be expanded to include all of STNV's contacts within the United States.").

admiralty and maritime claims "arise under federal law" within the terms of Rule 4(k)(2). Where, as here, plaintiff's complaint sounds in the general admiralty and maritime jurisdiction of a federal district court, Rule 4(k)(2) may properly be invoked as a means of acquiring personal jurisdiction over a foreign defendant.[6]

2. The Burden of Proof on Defendant's Amenability to Service of Process in Any State Under Fed. R. Civ. P. 4(k)(2)

Our starting point is the text of the rule itself:

If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant *who is not subject to the jurisdiction of the courts of general jurisdiction of any state.*

Fed. R. Civ. P. 4(k)(2) (emphasis added).

Before the 1993 amendments to the Rules of Civil Procedure, federal district courts relied exclusively on the state or territorial long arm statute or a specific grant of authority in federal law to obtain personal jurisdiction over a foreign defendant. This led to incongruous and ofttimes unjust results. *See, e.g., Omni Capital Int'l*

---

[6] This Court first addressed the issue last year. *See, Western Equities. Ltd. v. Hanseatic, Ltd.*, 35 V.I. 460, 956 F. Supp. 1232 (D.C.V.I. 1997). In *Western Equities,* the owners and insurers of a luxury yacht sued for damages resulting from the vessel having been repeatedly rammed by the defendant's yacht tender. 956 F. Supp. at 1233. Defendant was a Channel Islands corporation and the owner of another yacht of British registry. *Id.* Specifically rejecting the claim of the defendant in *Western Equities* echoed here by defendant STNV, the Court found that the plain text of Rule 4(k)(2) states that "it applies to claims brought under federal law in the broad, substantive generic sense." 956 F. Supp. at 1235.

STNV challenges the Court's holding in *Western Equities* as being contrary to removal cases holding that "questions arising under federal law" do not include those invoking general admiralty jurisdiction. *E.g., Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 365, 3 L. Ed. 2d 368, 79 S. Ct. 468 (1958), and *Tennessee Gas Pipeline v. Houston Casualty Ins. Co.*, 87 F.3d 150, 156 (5th Cir. 1996) (Defendant's Supplemental Reply Memorandum at pp. 1 — 3). Simply put, those cases are not this case. The now well accepted view is that admiralty and maritime cases fall within the ambit of Fed. R. Civ. P. 4(k)(2). *See, Western Equities,* 956 F. Supp. at 1235, n. 4. (citations omitted); *accord, World Tanker Carriers Corp. v. M/V Ya Mawlaya,* 99 F.3d 717, 722-23 (5th Cir. 1996) (specifically rejecting argument *Romero* requires finding admiralty claims lie outside scope of Fed. R. Civ. P. 4(k)(2)); and, *West Africa Trading & Shipping Co. v. London Int'l Group, et. al.,* 968 F. Supp. 996, 1000 (D.N.J. 1997) (same).

*v. Rudolf Wolff & Co., Ltd., et. al.*, 484 U.S. 97, 98 L. Ed. 2d 415, 108 S. Ct. 404 (1987) (plaintiff not able to sue in federal court for defrauding investors because defendant was not subject to jurisdiction under Louisiana's long-arm statute).[7] Since the reason for the expansion of the rule was lack of jurisdiction in a state, it is a prerequisite to the invocation of FED. R. CIV. P. 4(k)(2) that the defendant not be subject to service of process in any state.

■ The question which party bears the burden of proving the condition precedent that the defendant is not subject to jurisdiction in any state appears to be an issue of first impression in this Court and in this Circuit, probably because it is generally the plaintiff's duty to allege and prove personal jurisdiction. "When a defendant raises the defense of the court's lack of personal jurisdiction, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper." *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (reviewing district court's finding of personal jurisdiction under former FED. R. CIV. P. 4(e)), *citing, Carteret Savings Bank v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992); *CFMT, Inc. et. al. v. Steag Microtech, Inc. et. al.*, 965 F. Supp. 561, 562 (D. Del. 1997) (plaintiffs have burden of proof to establish personal jurisdiction). Accordingly, to survive a motion to dismiss for want of personal jurisdiction, the plaintiff bears the burden to prove that STNV is not otherwise subject to service of process in any state, as well as every other element of the federal long-arm rule embodied in FED. R. CIV. P. 4(k)(2).

---

[7] [RULE 4(k)(2)] was added to the FEDERAL RULES OF CIVIL PROCEDURE to correct "a gap in the enforcement of federal law that was created by the former rule when the defendant was a nonresident of the United States having contact with the United States sufficient to justify the application of United States law and to satisfy federal standards of forum selection but having insufficient contact with any single state to support jurisdiction under state long-arm statutes or to meet the requirement of the Fourteenth Amendment limitation on state court territorial jurisdiction . . . . Restrictions on the exercise of territorial jurisdiction by federal courts over persons outside the United States are still subject to the Fifth Amendment limitations on state-court jurisdiction with respect to affiliating contacts and the due process requirements of fair play and substantial justice."

*Sevison v. Cruise Ship Tours, Inc.*, 1997 U.S. Dist. LEXIS 12728, *33-*34, 1997 WL 530267 *11 (D.C.V.I. Aug. 15, 1997) *quoting* 4A C. ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1124 (2d ed. 1987, Supp. 1997).

It only remains, then, to determine whether the United States is entitled to additional jurisdictional discovery. Plaintiff appears to be under the erroneous impression that jurisdictional discovery was "limited to STNV's contacts with the Virgin Islands." The only limitation to discovery was a restriction to jurisdictional questions in general, but not to any particular aspect of personal jurisdiction. (Order of Magistrate Judge, October 26, 1994, ¶ 4) ("Discovery at this stage limited to jurisdictional questions."). The Court agrees with the defendant that

> this action has been pending for nearly three years, and the incident giving rise to the action occurred six years ago. The United States has had ample time, both through investigation prior to filing and during the pendency of this action to establish a basis for jurisdiction over STNV if one exists.

(Defendant's Supplemental Reply to United States' Supplemental Response at 3).

Whether or not to grant jurisdictional discovery is a matter committed to the sound discretion of the Court. *Kishi Int'l*, 1997 U.S. Dist. LEXIS 4961, 1997 WL 186324 *2. The Court has considered the request of the United States in light of the length of time plaintiff has had to establish a prima facie case of personal jurisdiction over STNV. The United States has had ample time to do so and its request for additional discovery is denied.

## III. Conclusion

The United States having failed to establish the prerequisites for personal jurisdiction under Rule 4(k)(2) of the Federal Rules of Civil Procedure, STNV's motion to dismiss for want of personal jurisdiction must be granted. An appropriate order shall issue.

ENTERED this 16th day of April, 1998.

### ORDER

For the reasons set forth in the accompanying memorandum, it is hereby

ORDERED that motion of defendant STNV to dismiss for want of personal jurisdiction be and the same is hereby GRANTED. And it is further

ORDERED that the style of this action be amended to reflect the Court's order dismissing defendant Statia Terminals N.V.

ENTERED this 16th day of April, 1998.