**James J. SZAFAROWICZ and Patricia Szafarowicz, Plaintiffs,**

**v.**

**Thomas GOTTERUP, Lori Gotterup, M.V. Bottom Line, Combined Cayman Investments (Grand Cayman) Ltd., Paradise Divers, Paradise Villas, KJ Dive Adventures and GRE Insurance Group, Defendants.**

**No. Civ.A. 98–40023–NMG.**

United States District Court,
D. Massachusetts.

Sept. 24, 1999.

John W. Spillane, Worcester, MA, for Plaintiffs.

Joseph A. Regan, Paige L. Tobin, Regan & Kiely, LLP, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

GORTON, District Judge.

James Szafarowicz ("Szafarowicz") filed this action against the defendants seeking damages for personal injuries allegedly suffered during a boating mishap. His wife, Patricia Szafarowicz, brings claims for loss of consortium.

The accident occurred on a dive boat named M/V Bottom Line that was used for scuba excursions in the Cayman Islands by Paradise Divers, a company owned by Thomas and Laurie Gotterup. The boat was owned by Combined Cayman Investments, Ltd. ("Cayman Investments"), a currently inactive company that carried protection and indemnity insurance offered by GRE Insurance Group ("GRE").

Pending before this Court are 1) the motion of five of the defendants to dismiss for lack of personal jurisdiction (Docket No. 12) and 2) the motion of GRE to dismiss on the ground that the law does not permit a plaintiff to file a direct suit against the insurance company of an alleged tortfeasor (Docket No 11).

### I. *Background*

The following facts, which include information relevant to the personal jurisdiction issue, are gleaned from the affidavits and exhibits accompanying the parties pleadings and memoranda filed in the case. The parties do not dispute the facts germane to the pending motions.

### A. The Gotterups and Their Stateside Connections

Defendants Thomas and Laurie Gotterup (the "Gotterups") are the owners of defendant, Paradise Divers, a company self-styled as "the first independent dive

operation on Little Cayman." At all relevant times, the Gotterups resided primarily in the Cayman Islands, but made return visits to North Carolina to see family and friends. Since 1996, they have spent four months a year in North Carolina.

Paradise Divers does not directly solicit customers in the United States. However, it advertises in diving magazines of general circulation in the United States, and sends brochures to dive shops in the United States for display. Its bookings in the United States are handled by defendant KJ Dive Adventures, a company that, according to the defendants, books dive trips throughout the world with numerous dive companies. Less than one percent of Paradise Divers' customers who come from Massachusetts. The record does not identify the number or percentage of Paradise Divers' customers who come from the United States as a whole.

## B. Paradise Villas

Defendant Paradise Villas is listed together with Paradise Divers in some of the advertising and promotional material included in the record. The specific relationship between the two entities is not made explicit, beyond the statement in a Paradise Divers' brochure that it is "working with Paradise Villas" to provide accommodations for customers.

## C. The Boat and Its Owners

Paradise Divers used the defendant M/V Bottom Line as its dive boat. The owner of the boat, Cayman Investments, did not, according to the affidavit of its director Micol Dise, advertise in the United States, send unsolicited promotional material to the United States or have any contact with the United States of any consequence. It did, however, carry insurance offered by GRE, a company incorporated in the United States.

## D. The Accident

In early 1995, James Szafarowicz booked a diving trip in the Cayman Islands with Paradise Divers through KJ Dive Adventures. He lodged at Paradise Villas. On February 10, 1995, Szafarowicz was thrown overboard from the M/V Bottom Line when the boat hit a reef while Laurie Gotterup was in control.

## II. *Personal Jurisdiction*

### A. Positions of the Parties

The Gotterups, M/V Bottom Line, Caymen Investments and Paradise Divers argue that they are not amenable to personal jurisdiction in this Court. The plaintiffs assert that personal jurisdiction is proper under Fed.R.Civ.P. 4(k)(2). That provision allows a court to exercise jurisdiction over a foreign defendant who is not subject to jurisdiction in any specific state so long as that defendant has sufficient contacts with the United States as a whole. On March 30, 1999, this Court asked the parties to submit additional memoranda addressing the applicability of Rule 4(k)(2) jurisdiction in the instant case.

The parties are in substantial agreement on the applicable law. The defendants urge this Court to follow the Second Circuit's approach in evaluating the sufficiency of a defendant's contacts under Rule 4(k)(2) and cite several cases from the Southern District of New York that have applied that test. *Western Equities, Ltd. v. Hanseatic, Ltd. and M/V Pari*, 956 F.Supp. 1232 (D.V.I.1997); *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F.Supp. 81 (S.D.N.Y.1995). They argue that their contacts with the United States are insufficient to render them subject to jurisdiction pursuant to Rule 4(k)(2).

The Szafarowiczs, without contesting the law, attempt to marshal facts and inferences that support the exercise of Rule 4(k)(2) jurisdiction under the standards set forth in those cases.[1] They request that

---

1. Although the plaintiffs imply that individuals might be subject to a different "minimum contacts" test than corporations, they offer no substantiation of that position.

the motion to dismiss be denied or, in the alternative, that they be allowed to conduct jurisdictional discovery before the court rules on the motion.

## B. The Factors

■ The *Western Equities* and *Eskofot* cases considered three "factors" bearing upon whether a defendant's activities constitute sufficient minimum contacts with the United States for purposes of Fed. R.Civ.P. 4(k)(2):

(1) transacting business in the United States;

(2) doing an act in the United States; and

(3) having an effect in the United States by an act done elsewhere.

*Western Equities,* 956 F.Supp. at 1237; *Eskofot,* 872 F.Supp. at 87. In *Eskofot,* a breach of contract case that developed into an antitrust suit, the court found that the alleged antitrust violations by the overseas defendant provided a predicate for Rule (4)(k)(2) jurisdiction under the third factor. *Eskofot,* 872 F.Supp. at 88.

In *Western Equities,* a case whose facts are more similar to the instant dispute, the plaintiff's boat was damaged by flotsam from defendant's boat while both craft were in a harbor in the West Indies. *Western Equities,* 956 F.Supp. at 1234. The plaintiffs brought suit in the United States District Court for the Virgin Islands. Jurisdictional discovery revealed that the defendants had 1) allegedly tried to sell their boat through a United States broker, 2) advertised their boat for charter in boating magazines of general circulation in the United States and 3) solicited potential charters through brokers in the United States by way of brochures, pamphlets and the like. *Id.* at 1236–1237. The court found Rule 4(k)(2) jurisdiction to be lacking:

The fact that the defendants' boat was advertised through U.S. brokers for charter and for sale in the United States does not prove that defendants conducted any business in the United States. At most it shows that defendants may have been testing the United States market.

*Id.* at 1238.

## C. The Present Case

The Szafarowiczs refer to the following facts and inferences in support of their claim that the exercise of Rule 4(k)(2) jurisdiction is proper in the instant case:

1) Paradise Divers targeted United States customers through magazine advertisements and the placement of its brochures in dive shops;

2) Paradise Divers used KJ Dive Adventures, a Minnesota company, as a booking agent for United States customers;

3) there is no indication that Paradise Divers had a customer base outside of the United States or tried to market itself in jurisdictions other than the United States; and

4) The Gotterups presumably leveraged their social connections in the United States to develop their business.

■ On the present record, the plaintiffs have not established that the defendants have sufficient contacts with the United States to subject them to Rule 4(k)(2) jurisdiction. There is no indication of how much business was generated by the marketing efforts of Paradise Divers in the United States. As in *Western Equities,* the whole exercise may not have progressed beyond the testing stage. Moreover, the record is too incomplete to draw any negative inference from the lack of evidence about marketing efforts or customer bases outside the United States. In addition, the assertion that the Gotterups "presumably" used their social connections in the United States to build their business is impermissibly speculative.

However, gaps in the record leave open the possibility that a very significant amount of Paradise Divers' business, perhaps even a substantial majority, was de-

rived from its marketing activities in the United States. *Western Equities*, by negative implication, suggests that Paradise Divers could be subject to Rule 4(k)(2) jurisdiction simply on the basis of its advertisements, brochures and booking agent activity, provided that it was generating significant business through its marketing in the United States and not just "testing the United States market."

Fortunately, federal rules and practice are flexible enough to allow the parties to develop an adequate record on the defendants' contacts with the United States without subjecting them to full-blown discovery. The plaintiffs will, therefore, be permitted to conduct jurisdictional discovery on the limited issue of the contacts between the defendants, i.e. the Gotterups, M/V Bottom Line, Cayman Investments and Paradise Divers, and the United States. *See United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 987 F.2d 39, 48 & n. 18 (1st Cir.1993) (commenting on appropriateness of jurisdictional discovery); *Surpitski v. Hughes–Keenan Corp.*, 362 F.2d 254, 255 (1st Cir. 1966) (plaintiff should be allowed jurisdictional discovery if it has shown that its position on personal jurisdiction is not frivolous).

Discovery will be limited to written interrogatories and requests for document production and admissions. *See Sunview Condominium Assoc. v. Flexel Int'l Ltd.*, 116 F.3d 962, 964 & n. 3 (1st Cir.1997) (interrogatories and document production are less intrusive modes of jurisdictional discovery); *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 681 (1st Cir.1992) (interrogatories and requests for admissions are a simpler and less expensive way to conduct jurisdictional discovery). This Court will reserve judgment on the motion to dismiss for lack of personal jurisdiction until the completion of such discovery.

### III. *Analysis of Direct Action*

GRE contends that the case against it should be dismissed because the law does not permit a plaintiff to file a direct suit against the insurance company of an alleged tortfeasor. GRE relied upon Massachusetts law in its original brief. On March 30, 1999, this Court solicited a additional memoranda from the parties on the applicability of Massachusetts law to the plaintiffs' claims. Both parties have provided supplemental briefs.

### A. Positions of the Parties

GRE and the Szafarowiczs agree that 1) federal admiralty law governs the claims in the instant case and 2) such law is silent on the issue of whether the Szafarowiczs can file a direct suit against the insurance company of an alleged tortfeasor. GRE argues that although this court could fashion a new rule of admiralty law to address the issue, it should refrain from doing so because the Supreme Court disfavors judicial creation of maritime insurance rules (citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 314, 75 S.Ct. 368, 99 L.Ed. 337 (1955)). GRE further contends that the Szafarowiczs have not cited any state law that would permit a direct action against GRE. GRE concludes, therefore, that the plaintiffs have failed to state a claim upon which relief can be granted.

The Szafarowiczs respond that this Court should allow their direct claim against GRE as a matter of federal admiralty law because, otherwise, they will left without recourse for the alleged liability of the now-inactive insured.

### B. Applicable Law

Generally, federal courts confronted with admiralty claims against insurers refer to state law to determine the validity of direct suits. *See Kiernan v. Zurich Cos.*, 150 F.3d 1120, 1123 (9th Cir.1998) (applying California law); *Conoco, Inc. v. Republic Ins. Co.*, 819 F.2d 120, 123–124 (5th Cir.1987) (applying Texas law). In so doing, the lower courts have heeded the admonition of the United States Supreme Court that regulation of maritime insur-

ance should be left to the states. *See Kiernan*, 150 F.3d at 1122.

This reliance on state law extends to suits directed at a tortfeasor's liability insurer. *See In re Litigation Involving Alleged Loss of Cargo from Tug Atlantic Seahorse*, 772 F.Supp. 707, 709–710 (D.Puerto Rico 1991). At least a large minority of states have enacted laws, dubbed "direct action statutes," that permit such suits. Mark Christian Elmer, *Marine P & I Insurers No Longer Safe from the Louisiana Direct Action Statute (If They Ever Were): Grubbs v. Gulf International Marine, Inc.*, 18 Tul.Mar.L.J. 371, 372–373 (1994) (discussing Fifth Circuit opinion).

> Direct action statutes ... permit an injured person to proceed directly against a tortfeasor's insurer. This right, however, is generally only available under limited circumstances: where the insured is either bankrupt or insolvent, and then only after the injured person has obtained a judgment against the insured.

*Id.* at 373–374 (footnotes omitted). At the same time,

> '[f]ederal admiralty law confers no general right to sue an insurance company directly [citation omitted] nor does it contain any specific bar against such an action.' *Steelmet, Inc. v. Caribe Towing Corp.*, 779 F.2d 1485, 1487 (11th Cir. 1986). Since some states allow such direct actions, and others do not, the question then arises as to which state's law should apply. Where the state law is being adopted by the federal court under its admiralty jurisdiction, and not simply as an exercise of diversity jurisdiction, a federal choice of law rule must be applied in choosing which state substantive law should be adopted. *State Trading Corp. v. Assuranceforeningen Skuld*, 921 F.2d 409 (2nd Cir.1990).

*Atlantic Seahorse, supra*, 772 F.Supp. at 710.

Therefore, although admiralty law governs the plaintiffs' claims against GRE,

admiralty law merely uses a federal choice of law rule to determine which substantive state law applies.

## C. The Present Case

This Court will apply the "significant contacts or nexus test" to determine the appropriate choice of law in the instant case. *Id.* at 711 (discerning that test to be the majority approach). *See also Illinois Constructors Corp. v. Morency & Assoc., Inc.*, 802 F.Supp. 185, 188 (N.D.Ill.1992) ("Federal courts sitting in admiralty apply the law of state with the most significant relationship to the dispute.").

On the present record, the state-side contacts significant to the dispute are with Massachusetts. The plaintiffs reside here and have filed suit here. Although those facts provide a slim basis for applying the choice-of-law test, in the absence of any countervailing facts, they suffice to make Massachusetts law the most appropriate choice.

Massachusetts has a direct action statute that allows

> [a]ctions to reach and apply the obligation of an insurance company to a judgment debtor ... under any ... policy insuring a judgment debtor against liability for loss or damage on account of bodily injury or death or for loss or damage resulting therefrom, or on account of damage to property, in satisfaction of a judgment covered by such policy, which has not been satisfied within thirty days of the date when it was rendered.

M.G.L. c. 214 § 3(9). The statute clearly contemplates that a tort victim must obtain a judgment against the tortfeasor before initiating an action against that tortfeasor's liability insurer. The plaintiffs' direct suit against GRE is therefore premature and must be dismissed. The dismissal will not, however, prejudice the rights of the Szafarowiczs to reassert their claims pursuant to M.G.L. c. 214 § 3(9) if

44

they eventually obtain a judgment against Cayman Investments.

**ORDER**

For the foregoing reasons,

1) The motion of defendant GRE to dismiss (Docket No. 11) is ALLOWED. The case against GRE is hereby dismissed without prejudice to renewal under M.G.L. c. 214 § 3(9) at the appropriate time.

2) The plaintiffs may, within thirty (30) days of this order, serve written personal jurisdiction discovery requests pursuant to Fed.R.Civ.P. 33, 34, and 36 upon the remaining defendants.

3) The defendants shall, within thirty (30) days after receipt of any such discovery requests, serve responses thereto.

4) The plaintiffs may, within thirty (30) days from the receipt of such responses, file a memorandum of law addressing the factual basis for the exercise of personal jurisdiction by this Court under Fed. R.Civ.P. 4(k)(2).

5) The defendants may, within fifteen (15) days from the date of the filing of the plaintiffs' memorandum, file a responsive memorandum.

So ordered.