Captain Sheriff SAUDI, Plaintiff

v.

S/T MARINE ATLANTIC, Her Equipment and Appurtenances, In Rem (a/k/a M/V Marine Atlantic, Her Equipment and Appurtenances, In Rem, a/k/a M/T Marine Atlantic, Her Equipment and Appurtenances, In Rem), Marine Atlantic, Ltd., John Doe Company, Owner of the Vessel Marine Atlantic, Acomarit Services Maritimes, S.A., Osprey Acomarit Ship Management, Inc., Valmet–Appleton, Inc., Appleton Machine Co. (Appleton Marine Division), Appleton Machine Co., Inc., Appleton Marine, Inc., John Doe Company, Designer of the Crane, Koch Petroleum Group, L.P., Jurong Shipyard, Ltd. and United States Trust Company of New York, Defendants

Civil Action No. H–99–2367.

United States District Court,
S.D. Texas,
Houston Division.

Feb. 1, 2000.

Afton Jane Izen, Bellaire, TX, for Captain Sheriff Saudi.

Thomas R. Nork, Bell Ryniker et al., Houston, TX, for Marine Atlantic Ltd., Acomarit Services Maritime S.A.

Hollis Horton, Orgain, Bell & Tucker, Beaumont, TX, for Appleton Machine Co., Appleton Marine Inc.

F. Michael Stenglein, Weil Gotshal & Manges, Houston, TX, for United States Trust Company of New York.

Michael Evan Jaffe, Arent Fox Kintner Plotkin & Kahn, Washington, DC, Mi-

chael D Hudgins, Hudgins Hudgins and Warrick, Houston, TX, David Kelleher, Stephen M. Hall, Arent Fox et al, Washington, DC, for Valmet–Appleton Incorporated.

Steven Michael Duble, Hays McConn Rice and Pickering, Houston, TX, for Koch Petroleum Group, Koch Shipping Inc., Koch Supply and Trading Co.

David Patrick Ayers, Fulbright & Jaworski, Houston, TX, Innes A Mackillop, White Mackillop et al., Houston, TX, for Marine Transport Lines, Inc., Marine Transport Corp.

## ORDER

HARMON, District Judge.

Pending before the Court in the above referenced admiralty and maritime action alleging negligence, unseaworthy vessel, negligence under the Jones Act (46 U.S.C.App. § 688), breach of warranty of merchantability, and strict liability in tort, resulting in severe injury to Plaintiff Captain Sheriff Saudi ("Saudi") on May 17, 1999 when a crane, transferring him from the vessel Marine Atlantic to the vessel American Discovery, collapsed and dropped him about fifty feet into the water, with the crane and its equipment falling on top of him, are the following motions:

(1) Defendant Appleton Marine, Inc.'s ("Marine's") motion to dismiss pursuant to Fed. Rule Civ. P. 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(3) for improper venue (# 3), inside Defendant's answer;

(2) Motion to dismiss for lack of personal jurisdiction and improper venue under Federal Rule of Civil Procedure 12(b)(2) and (3), filed by Defendant Appleton Machine Company, Inc. ("Machine") (# 4), also inside its answer;

(3) Marine and Machine's motion to dismiss for lack of personal jurisdiction (# 20);

(4) Defendant Acomarit Services Maritimes S.A.'s ("Acomarit's") motion to dismiss for lack of personal jurisdiction and improper service (# 9);

(5) Acomarit's motion for leave to file amended answer and to withdraw that portion of # 9 pertaining to improper service of process (# 38);

(6) Saudi's motion for leave to make further response after discovery (# 24); and

(7) Saudi's motion to strike (# 25) affidavits and extraneous matter submitted by Defendants Marine and Machine in support of their motions to dismiss.

Marine and Machine's motions to dismiss # 3 and 4 are merely brief, conclusory statements contained inside Defendants' answers to preserve their right to assert such affirmative defenses. Instrument # 20, on the other hand, is a detailed motion with supporting brief, as required by Local Rule 6A. Moreover, Machine has filed a first amended answer, replacing # 4. Therefore the Court addresses only # 20, which meets the prerequisites of the local rule, and finds that # 3 and # 4 are MOOT.

The Court grants Acomarit's motion for leave (# 38) to file amended answer and to withdraw that portion of # 9 regarding improper service of process.

Therefore, the only remaining ripe motions are Marine and Machine's motion to dismiss for lack of personal jurisdiction (# 20), Acomarit's motion to dismiss for lack of personal jurisdiction (# 9), Saudi's motion to strike (# 25), and Saudi's motion for leave to make further response after discovery (# 24).

Because the motion to strike the affidavits and extraneous evidence submitted by

Marine and Machine in support of their motion to dismiss affects the viability of Machine and Marine's motion to dismiss under Rule 12(b)(2), the Court first reviews the motion to strike.

Saudi complains that the extrinsic evidence submitted with # 20 is outside the pleadings, that discovery is not complete, and that currently Plaintiff is unable to controvert Defendants' self-serving evidence. He also argues that the Court has the discretion to consider whether to reject such evidence. *Skyberg v. United Food and Commercial Workers, Int'l Union,* 5 F.3d 297, 302 n. 2 (8th Cir.1993), and *Finley Lines Joint Protective Bd. v. Norfolk Southern Corp.,* 109 F.3d 993, 996 (4th Cir.1997).

Because it is relevant to the motion to strike as well as the motions to dismiss, the Court puts forth the standard of review in the Fifth Circuit for *in personam* jurisdiction challenges and the burden and nature of proof at this stage of the litigation.

In federal court personal jurisdiction may be exercised over a nonresident defendant when (1) that party is amenable to service of process under the forum state's long-arm statute and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *Jones v. Petty–Ray Geophysical Geosource Inc.,* 954 F.2d 1061, 1067 (5th Cir.1992).

The Texas long-arm statute authorizes service of process on a nonresident defendant if that party is "doing business" in Texas. Tex. Civ. Prac. & Rem.Code Ann. § 17.042. The Texas Supreme Court has interpreted the "doing business" language of its long-arm statute, Texas Civil Practice & Remedies Code § 17.042, to reach as far as the federal constitutional requirements of due process will allow. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357

(Tex.1990). Thus the Court examines the due process requirements directly.

" 'A party's liberty interest under the fourteenth amendment protects it from being subjected to binding judgments of a forum with which it has established no meaningful contacts, ties or relations.' " *Guidry v. U.S. Tobacco Co., Inc.,* 188 F.3d 619, 623 (5th Cir.1999), *quoting Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), and *International Shoe v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The due process clause requires first that a foreign defendant have "minimum contacts" with the forum state so that the maintenance of a suit does not offend "traditional notions of fair play and substantial justice." *Id., citing International Shoe,* 326 U.S. at 316, 66 S.Ct. 154. For minimum contacts, a nonresident defendant must have purposefully availed himself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of its laws. *Gardemal v. Westin Hotel Co.,* 186 F.3d 588, 595 (5th Cir.1999).

Where a nonresident defendant has sufficient "continuous and systematic" contacts with the state in which the suit is pending, the court may exercise "general" personal jurisdiction over that party in a cause of action that does not arise out of or relate to that defendant's contacts with the forum state. *Guidry,* 188 F.3d at 623, *citing Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) "continuous and systematic contacts" are required by the due process clause because the forum state does not have a direct interest in the cause of action. *Gardemal,* 186 F.3d at 595. Thus the minimum contacts review is more demanding and broader for general jurisdiction than for specific jurisdiction and requires the plaintiff to demon-

strate substantial activities in the forum state. *Id.*

■ Where the controversy "is related to or 'arises out of' [the defendants'] contacts with the forum," the district court may exercise "specific" personal jurisdiction if the nonresident defendant has "purposefully directed" his activities at the residents of the forum state. *Guidry,* 188 F.3d at 623, *citing Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Burger King,* 471 U.S. at 474, 105 S.Ct. 2174. The court must examine the relationship among the defendant, the forum state, and the litigation to determine whether the defendant purposefully established "minimum contacts" with the forum state that made it foreseeably that the nonresident defendant should "reasonably anticipate being haled into court there." *Id.* at 625, *citing Burger King,* 471 U.S. at 474, 105 S.Ct. 2174. To decide if there is specific jurisdiction, the district court must apply a three-prong test: (1) whether the defendant has minimum contacts with the forum state, i.e., did it purposely direct its activities toward the forum state or purposely avail itself of the privilege of conducting activities there; (2) did the plaintiff's cause of action arise out of or result from the defendant's forum-related contacts; and (3) would the exercise of personal jurisdiction be fair and reasonable? *Id.*

■ If the court finds that the foreign defendant's related or unrelated contacts with the forum state are sufficient, it must then examine whether the exercise of jurisdiction is "fair"[1] by examining several factors relating to "traditional notions of fair play and substantial justice": (1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies. *Felch v. Transportes Lar-Mex SA De CV,* 92 F.3d 320, 324 (5th Cir.1996).

■ The party that invokes a federal court's jurisdiction bears the burden of establishing minimum contacts that warrant the exercise of personal jurisdiction over a foreign defendant. *Id., citing Bullion v. Gillespie,* 895 F.2d 213, 216 (5th Cir.1990). If the court rules on a motion to dismiss for lack of jurisdiction without holding an evidentiary hearing, as here, the nonmoving party need only make a *prima facie* showing, through pleadings, depositions, affidavits, exhibits, or any combination of recognized methods of discovery, of minimum contacts of each defendant to support specific personal jurisdiction and demonstrate that the cause of action arose out of that defendant's forum-related contacts; the court must accept as true the nonmovant's allegations and resolve all factual disputes in its favor. *Id., citing Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir.1999), and *Bullion,* 895 F.2d at 217 ("uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved

---

1. Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair. *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 215 (5th Cir.1999), *citing Akro Corp. v. Luker,* 45 F.3d 1541, 1547 (Fed.Cir.1995). To show that the exercise of *in personam* jurisdiction is unfair and unreasonable, the defendant must make a "compelling case". *Id., citing Burger King,* 471 U.S. at 477, 105 S.Ct. 2174. It is very unusual to conclude that the exercise of jurisdiction is unfair after there has been a showing of sufficient minimum contacts. *Id., citing Akro,* 45 F.3d at 1549.

in the plaintiff's favor"); *Colwell Realty Investments v. Triple T Inns of Arizona,* 785 F.2d 1330, 1333 (5th Cir.1986). Ultimately, the plaintiff must establish personal jurisdiction by a preponderance of the evidence either at a pretrial evidentiary hearing or at trial. *Felch,* 92 F.3d at 326, *citing Travelers Indem. Co. v. Calvert Fire Ins. Co.,* 798 F.2d 826, 831 (5th Cir.1986), *modified on rehearing in unrelated part,* 836 F.2d 850 (5th Cir.1988), and *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1270–71 & n. 12 (5th Cir.1983) (only where the district court decides a motion to dismiss for lack of personal jurisdiction may the plaintiffs satisfy their burden by presenting a *prima facie* case).

■ A dismissal for lack of personal jurisdiction is not a dismissal on the merits and must therefore be without prejudice. *Guidry,* 188 F.3d at 623.

Saudi's motion to strike complains that the evidence presented by Defendants in support of their motion to dismiss is "extrinsic," outside the pleadings, and discovery is not yet complete. As noted, such evidence is admissible for the court's determination of motions to dismiss and Plaintiff at this stage needs only to make a *prima facie* case of minimum contacts, with any controverted facts to be resolved in his favor. Thus striking is not appropriate and the motion should be denied.

Plaintiff's second amended complaint identifies Valmet–Appleton, Inc., Appleton Machine Co. (Appleton Marine Division), Appleton Machine Co., Inc., and Appleton Marine, Inc. as "believed to be the companies that built and serviced the crane in question," and Osprey Acomarit Ship Management, Inc, and Acomarit Services Maritime, S.A. as "believed to be management companies for the vessel, 'Marine Atlantic[,]' and for its owner Marine Atlantic, Ltd." In his motion to strike, Saudi represents that without discovery he is unable to controvert Defendants' evidence. He identifies a number of factual issues that must be resolved, including the date of the manufacture of the crane, the date of incorporation of Marine and Machine, whether Marine or Machine sold or serviced the crane in question prior to its collapse, whether they are successors in interest to the original manufacturer, known as "Appleton Machine Company," because of a transfer of assets, and whether that original manufacturer is separate and distinct from Marine and Machine, whether the original manufacturer was fraudulently dissolved to avoid liability on its products, and whether Marine and Machine placed the crane into the stream of commerce. Saudi cites law for the proposition that if he can show that Defendants stand in the legal shoes of the manufacturer, they are subject to personal jurisdiction wherever the product causes injury. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Bean Dredging Corp. v. Dredge Technology Corp.,* 744 F.2d 1081, 1084 (5th Cir.1984). Moreover, Saudi states that he

> believes that the ultimate evidence will establish that the crane in question was installed on board the S/T Marine Atlantic in the coastal waters in the State of Louisiana or in dry dock in that state. Whoever manufactured this crane sold the crane to the ship builder who, in turn, installed it on the vessel. The manufacturer of the crane in question placed the crane in the "stream of commerce" by vending the crane to shipbuilders who, in turn, the manufacturers know or should have known[,] would install the device as an integral part of the ship. In personam jurisdiction over a manufacturer may be found where the manufacturer sells a product to a distributor (or another manufacturer such

as the shipbuilder here) with the knowledge that it will be used in the forum state. *Ruston Gas Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415 (5th Cir. 1993).

Plaintiff maintains that he needs discovery to prove his allegations, whether in response to a motion to dismiss or, if that is converted, to a motion for summary judgment.

Defendants have not responded to the motion to strike.

With a supporting affidavit from Andre Van Belkom, Marine and Machine's motion to dismiss states that the crane was manufactured in 1976, before Marine or Machine came into existence. It further states that they did not sell or service the crane prior to the accident. Marine and Machine also claim they have no contacts with Texas to justify exercise of personal jurisdiction, either general or specific, over them.

In response, Saudi filed his motion for leave to make further response after discovery. Noting his allegations of negligent design and maintenance of the crane, he reiterates that Appleton Machine Company is indisputedly the original manufacturer of the crane. He further points out that the crane had the name Appleton Machine Company, written on it and that Marine sent a surveyor, L. Keith Reay ("Reay"), on its behalf to inspect the crane at the time of the incident. Reay subsequently filed a damage report (exhibit A to the motion), showing that Appleton Machine Company of Wisconsin USA was the manufacturer and that Ken Hartwig was present at the survey of the crane for Marine, the crane manufacturer's representative. Marine and Machine have answered that they are not proper parties, but Plaintiff believes to the best of his knowledge that one or both is or are the successor(s)-in-interest to Appleton Machine Company. Machine and Marine, meanwhile, claim that Valmet–Appleton, Inc. is the successor-in-interest to the assets and liabilities of Appleton Machine Company. Plaintiff argues there is sufficient evidence to require these Defendants to respond to discovery to determine which company purchased the assets and liabilities of the original manufacturer.

■ It appears to this Court that Plaintiff should be allowed a limited period of time for discovery restricted to the issue of the successor in interest to Appleton Machine Company and to written discovery (interrogatories, admissions, and requests for production of documents) since that restriction will be a minimal imposition on Marine and Machine. The Court therefore currently denies the motion to dismiss, but grants leave to Marine and Machine to reurge it in the same form or as a motion of summary judgment. The Court will allow 30 days for discovery from the time Plaintiff's counsel receives this order. If Plaintiff is able to show that they are the successors in interest to the original manufacturer and that they put the crane into the stream of commerce, that single act under Fifth Circuit law[2]

2. In *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court held that the defendant manufacturer's placing of its product in the stream of commerce with the knowledge that the product would be used in the forum state is sufficient to constitute minimum contacts justifying the exercise of personal jurisdiction in the forum state over the manufacturer. *See also Burger King,* 471 U.S. at 473, 105 S.Ct. 2174 (holding that jurisdiction over an nonresident defendant was proper if the defendant had delivered its products into the stream of commerce with the expectation that they would be purchased by consumers in the forum state, and those products subsequently injured consumers in the forum state). In *Bean Dredging,* 744 F.2d 1081 (5th

would be sufficient to confer personal jurisdiction since the defective crane allegedly gave rise to the cause of action here.[3]

Acomarit, sued as a management company for the vessel "Marine Atlantic" and its owner, Marine Atlantic, Ltd., also moves for dismissal for lack of personal jurisdiction over it. As underlying relevant facts, Acomarit states that the Marine Atlantic is a Very Large Crude Carrier ("VLCC"). Such VLCCs are unable to enter any American port in the Continental United States, including Texas ports, because of the deep draft, approximately 75 feet, of the vessel. Therefore it remains offshore, distant from the waters of Texas and other coastal states. At the time Saudi was injured while he was being transferred from the Marine Atlantic to a nearby support vessel, the Marine Atlantic was anchored in international waters approximately 60 miles off the coast of Texas. The territorial waters of the State of Texas extend only ten miles seaward from the coast, and it is physically impossible for the Marine Atlantic to navigate within them.

Furthermore, Acomarit notes, its contract with Marine Atlantic Ltd., owner of the vessel, was not negotiated in Texas, nor was its maintenance contract with Koch Oil. Neither contract was performable in Texas. Acomarit further insists that it has no contacts with Texas, does not continuously or systematically engage in any business in the United States, nor own or lease any real property in the United States. The claims against Acomarit relate solely to activities on the high seas in international waters, with no relation to or contacts with Texas justifying specific jurisdiction.

Nor does this Court have general jurisdiction over Acomarit, Acomarit insists. It is not authorized to do business in Texas,

Cir.1984), the Fifth Circuit applied *World–Wide Volkswagen*'s test and found that a Washington state components manufacturer that injected its steel castings into the stream of commerce had established sufficient contacts with Louisiana, where the castings ultimately were sold, to permit personal jurisdiction in Louisiana over the manufacturer.

In *Asahi Metal Ind. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), a plurality of justices concluded that merely putting a product into the stream of commerce was not enough even if the defendant was aware that it would eventually reach the forum state and that "additional conduct," i.e., some other act by the defendant purposefully directed toward the forum state was required for sufficient minimum contacts for personal jurisdiction. As examples the plurality suggested a showing of intent or purpose to serve the market in the forum state, designing the product for the forum state's market, advertising in the forum state, establishing channels to provide regular advice to customers in the forum state, or marketing the product through a distributor agent in the forum state. *Id.* at 112, 107 S.Ct. 1026. Nevertheless the same number of justices rejected this "stream-of-commerce-plus" test in *Asahi*, but found that the defendant failed to satisfy the second prong of personal jurisdiction, the fairness test. *Id.* at 115–16, 107 S.Ct. 1026.

While some courts follow the stream-of-commerce-plus test, the Fifth Circuit has concluded that because the Supreme Court's "splintered view of minimum contacts in *Asahi* provides no clear guidance, we continue to gauge [the nonresident defendant]'s contacts with Texas by the stream of commerce standard as described in *World–Wide Volkswagen* and embraced in this Circuit." *Irving v. Owens–Corning Fiberglas Corp.*, 864 F.2d 383, 386 (5th Cir.), cert. denied sub nom. *Jugometal Enters. for Import and Export of Ores and Metals v. Irving*, 493 U.S. 823, 110 S.Ct. 83, 107 L.Ed.2d 49 (1989). *See also Ham v. La Cienega Music Co.*, 4 F.3d 413, 416 & n. 11 (5th Cir.1993). Thus it continues to follow its pre-*Asahi* tests from *World–Wide Volkswagen* and *Bean Dredging*.

3. The Court notes that Machine and Marine studiously avoid discussing this theory in arguing for dismissal of the claims against them for lack of personal jurisdiction.

never had an agent for service of process in Texas, never solicited business in Texas, never signed a contract in Texas, never had an employee based in Texas, never owned real property in Texas, never maintained an office in Texas, and does not maintain any records in Texas. Thus it lacks continuous or systematic contacts with Texas.

Acomarit further maintains that it does not have minimum contacts with the United States sufficient to establish personal jurisdiction, based on Fed.R.Civ.P. 4(k),[4] as evidenced by an affidavit from its general manager, Captain Jacques Bille.

In response, Saudi, disagreeing with Acomarit's presentation of the facts, argues that the Marine Atlantic was in what the United States Coast Guard characterizes as the "water body of Texas" and the "exclusive business and economic zone" of Texas. With maps (Exhibits A,B,C. and D to Supplement, instrument #15), he claims that the vessel "was carrying on lightering operations within the proximity of the Galveston Lightering Area No. 2, approximately 54.5 statute miles off Galveston Island located on the coast of Texas, approximately 150 nautical miles North of the boundary of the 'exclusive business and economic zones', about 47 nautical miles South of the Texas coast." He further states that the Marine Atlantic had to avoid getting too close to the oil rigs in the area.

As for contacts with Texas, Saudi points to Acomarit's admission that it has a contract with Koch Oil, which is an American company located in Wichita, Kansas, and that pursuant to that contract, Acomarit ordered the Marine Atlantic to the location off Texas to fulfill Koch's floating storage requirements. Saudi also lists as contacts the following: (1) a major portion of the oil stored on the vessel was contractually committed for transportation through Texas and the remainder was to be transported through the United States for the ultimate benefit of Koch Oil or of United States companies under contract with Koch Oil; (2) the oil ultimately entered the United States economic stream for use after refinement by the government or citizens of the United States; (3) the United States Coast guard issued a tank vessel examination certificate to the Marine Atlantic to enable it to do business in the designated or customary lightering areas within the Exclusive Economic Zone ("EEZ") of the United States, which in this action was within the "Texas waterbody"; (4) the vessel and/or Acomarit submitted a certificate of responsibility to for the vessel to satisfy requirements of the United States Coast Guard and the Environmental Protection Agency in the event that there should be an oil spill during the lightering operations; (5) the vessel under Acomarit's management was conducting its operation 50 nautical miles south of Gal-

---

4. Federal Rule of Civil Procedure 4(k) provides in relevant part,

(1) Service of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant

(A) who would be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located or

. . .

(2) If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing

a waiver of service is also effective with respect to claims under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Rule 4(k)(2) has been held to be applicable to admiralty and maritime cases. *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 722–23 (5th Cir.1996); *Western Equities, Ltd. v. Hanseatic, Ltd.*, 956 F.Supp. 1232, 1235 n. 4 (D.Virgin Islands 1997).

veston, within the business and economic zone of the United States; (6) during the lightering operations ship chandlers from Texas and the United States provided food, spare parts, etc. to the Marine Atlantic, thus engaging in purposeful activity in the United States and invoking the benefits and protections of its laws; (7) when the incident occurred, Acomarit contracted with Marine to come from Texas to the vessel to examine the damage to the crane and make recommendations, thus affecting the economic interests of Texas and the United States; (8) Acomarit further contracted with Texas attorney Tom Nork to come to the vessel with the surveyors for damage control; (9) the Marine Atlantic regularly conducts operations at the Galveston Lightering Areas No. 2, the Sabine Lightering Area, and the Southwest Pass Lightering Area of the coast of Texas and Louisiana, and at the Louisiana Offshore Oil Platform (Loop) near New Orleans, Louisiana, thereby affecting the economic interests of Texas, Louisiana, and the United States; (10) Acomarit contracted with a Texas and/or United States company to provide helicopter services for the surveyors and attorney to come to the vessel to inspect the crane and to give legal advice; (11) the United States Coast Guard came to the vessel to investigate and make a report after the incident, and it regularly patrols the Marine Atlantic for compliance with United States Coast Guard Guidelines for lightering operations, safety procedures, oil spills, illegal acts, and accident avoidance since the vessel's operations are carried on within the Coast Guard's jurisdiction; (10) Acomarit is affiliated with Osprey Acomarit, Inc., a United States corporation located in Maryland; (11) a United States agent was hired to provide the vessel with a cell phone for business communications with Texas and the United States during its operations in the business and economic zone of the United States; (12) Koch Oil, a United States company that chartered Acomarit, paid Acomarit in United States dollars from a United States bank account; (13) Koch Oil chartered a Texas corporation and United States company, American Eagle Tanker, to provide lightering services for the Marine Atlantic; (14) Plaintiff, who as STS Superintendent (Mooring Master) was in charge of the operation, is a citizen of the United States; (15) the support vessels for the operations of the Marine Atlantic are of United States registry and carry United States flags; (16) some of the vessel's crew travel to the ship through airports in cities of the United States; (17) the United States Coast Guard has the authority to inspect the Marine Atlantic and all ships that enter the business and economic zone of the United States and directs traffic in the fairways of the exclusive economic zone to prevent collision and to protect United States waters from pollution; (18) United States rules and regulations set out markers for navigation and designated areas for designated activities in the exclusive economic zone of the United States; (19) United States citizens pay for planning and maintaining the exclusive economic zone that the Marine Atlantic was using; (20) because the Marine Atlantic uses the exclusive economic zone protected, maintained, and policed by the United States Coast Guard, its insurance costs are reduced; and (21) Acomarit advertises the services of its fourteen vessels for hire, including the Marine Atlantic, on the Internet, which reaches homes in the United States, while some of Acomarit's vessels have entered United States ports and directly conducted business with the United States.

Saudi also contends that this Court has jurisdiction over Acomarit based on Fed. R.Civ.P. 4(k)(2), which "sanctions personal jurisdiction over foreign defendants for

claims arising under federal law when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States' law but without sufficient contacts with a state to satisfy the due process concerns of the long-arm statute of any particular state." *World Tanker Carriers Corp. v. M/V Ya Mawlaya,* 99 F.3d 717, 720 (5th Cir.1996) (holding that Rule 4(k)(2) applies to admiralty cases and a minimum contacts analysis is used to determine whether imposition of personal jurisdiction would offend "traditional notions of fair play and substantial justice"). He points to the numerous economic relationships and contract between Acomarit and Texas and the litigation listed above as minimum contacts, demonstrating that Acomarit has engaged in purposeful activity in the United States and invoked the benefits and protection of its laws. He insists that Acomarit has continuous and systematic contacts with both the United States and Texas.[5] He points to the three-factor test frequently used for sufficiency of minimum contacts for general jurisdiction to exercise personal jurisdiction under Rule 4(k)(2): (1) transacting business in the United States; or (2) doing an act in the United States; or (3) having an effect in the United States by an action done elsewhere. *Western Equities, Ltd. v. Hanseatic, Ltd.,* 956 F.Supp. 1232, 1237 (D.Virgin Islands, 1997), *citing Eskofot A/S v. E.I. Du Pont De Nemours & Co.,* 872 F.Supp. 81, 87 (S.D.N.Y.1995). Saudi asserts that Acomarit has continuous and systematic contacts with the United States and with Texas and that therefore the Court can assert general personal jurisdiction over Acomarit under Rule 4(k)(2).

In reply, Acomarit contends that there is no personal jurisdiction over it because (1) there is no nexus between Texas and Acomarit and the incident in international waters and (2) Acomarit had and has no continuous and systematic contacts with Texas. Acomarit objects to Saudi's "laundry list" of allegations of links between Acomarit and Texas and challenges the merits of his response.

■ Regarding his allegations that the vessel was located in the "water body of Texas" in an "exclusive business and economic zone" of the United States, Acomarit states that it has found no statute, regulation or federal or Texas case that uses these terms and charges that they are unfounded and lacking in legal authority. The bottom line is that the Marine Atlantic was in international waters at the time of the incident, and thus the incident did not occur in Texas, in Texas waters, or within Texas' jurisdictional reach. This Court agrees that the terminology employed by Saudi fails to obfuscate the fact that the location of the accident was not in Texas or United States waters to create a nexus with the forum or generally with the United States.

---

**5.** The Court would point out that Saudi's argument that Acomarit has sufficient contacts with both Texas and the United States to satisfy Rule 4(k)(2) jurisdiction contradicts his own authority that federal long-arm jurisdiction is not an option where minimum contacts of the party satisfy a state long-arm statute.

A precondition to invoking the federal long-arm statute is that the defendant cannot be subject to the personal jurisdiction of any State. Once this prerequisite is met, Rule 4(k)(2) fills the gap and provides a plaintiff with the mechanism to obtain personal jurisdiction in a federal court over a foreign defendant who has sufficient contacts with the United States as a whole to satisfy due process requirements under the law and Constitution of the United States.

*Western Equities, Ltd. v. Hanseatic, Ltd.,* 956 F.Supp. 1232, 1234(D.Virgin Islands, 1997), *citing Eskofot A/S v. E.I. Du Pont De Nemours & Co.,* 872 F.Supp. 81, 87 (S.D.N.Y.1995).

■ Regarding Acomarit's contract with Koch, Acomarit reiterates that it was not negotiated or performable in Texas. Under Texas law, merely negotiating a contract with a Texas company, the performance of which will occur outside of the state does not, by itself, amount to a contact sufficient to give rise to jurisdiction. *U–Anchor Adver., Inc. v. N.H. Burt*, 553 S.W.2d 760, 763 (Tex.1977). Thus contracting with a Kansas company for performance of floating storage in international waters would also not constitute a contact with Texas for purposes of jurisdiction.

Acomarit argues that there is no proof that the oil destined for storage aboard the Marine Atlantic was transported from Texas, but even if it was, that point is merely a random and fortuitous link with Texas, not a purposeful direct of Acomarit's activities toward the forum state. *Burger King*, 471 U.S. at 472–76, 105 S.Ct. 2174. The Court agrees.

■ As for the required documentation routinely forwarded from the vessel to the United States Coast Guard, Saudi cites no authority for the proposition that such an act imparts general jurisdiction over Acomarit. All tank vessels that trade with United States ports, either directly or indirectly through lightering vessels destined to/from United States ports, require certification from the United States Coast Guard. If the documentation gave rise to state jurisdiction, Saudi could pick whatever state he wanted.[6] Acomarit further insists that the Coast Guard's marine anti-pollution activities do not create a contact between Acomarit and Texas.[7]

■ As for the vessel's receipt offshore of food and supplies from Texas, Acomarit emphasizes that Saudi again provides no authority that such provisions amount to contacts sufficient to impose general personal jurisdiction. Acomarit maintains that such activity was incidental to the operation of the vessel, whose location offshore the coast of Texas was merely fortuitous because Acomarit acted on Koch's instructions.[8] Such incidental commerce does not give rise to general personal jurisdiction. *Asarco, Inc. v. Glenara Ltd.*, 912 F.2d 784, 786–87 (5th Cir.1990). *See also Helicopteros*, 466 U.S. at 414 n. 8, 104 S.Ct. 1868. and *Western Equities*, 956 F.Supp. at 1236–37. Significantly, Saudi's injuries did not arise in connection with

---

6. The Court agrees that certification from the Coast Guard does not satisfy the minimum contacts requirement to assert jurisdiction. *See Powell v. Purcell*, No. 89–C–755–N, 1990 WL 192565, *5 n. 4 (E.D. Va. Nay 17, 1990), where the Court found that the allegation that the United States Coast Guard inspected the vessel's documents and determined they were improper was qualitatively insufficient to satisfy due process minimum contact standard.

7. This Court again concurs. Absent a claim against a foreign defendant for pollution, general Coast Guard anti-pollution activities, rules, and regulations would not constitute a minimum contact sufficient to warrant imposition of personal jurisdiction over it.

8. The Court notes that where the nonresident defendant does not direct and control the destination of the vessel, there is no personal jurisdiction over that defendant because that defendant cannot purposely avail itself of the benefits and protections of the forum port. *See, e.g., Asarco*, 912 F.2d at 787 (because manager lacked control over where vessels would make port, it could not have availed itself of the benefits and protections of doing business in forum state by virtue of its sporadic operational management of vessels sent to Louisiana by others); *Thypin Steel Company, Inc. v. M/V Mikhail Strekalovskiy*, No. CA 98–1799, 1997 WL 169437 *2 (E.D.Pa. April 3, 1997) (due process standard not satisfied where there was no showing that defendant time-charterer participated in directing ship to forum state, and thus purposely availed himself of its benefits and privileges).

these challenges and therefore the allegation fails to support personal jurisdiction under either a specific or a general analysis.[9]

Contrary to Saudi's legally unsupported assertion, Acomarit insists that its actions after the occurrence do not create contacts with Texas sufficient to give rise to general personal jurisdiction. Again the Court concurs.

■ Furthermore, Saudi's claim that Atlantic's regular control of lightering operations some 60 miles off the Texas cost give rise to general jurisdiction over Acomarit is unfounded. Acomarit does not own the Marine Atlantic. Saudi cites no authority for his proposition that the oil aboard the vessel, which also does not belong to Acomarit, might be transported to Texas for refining and onward transportation or directly to onward transportation and gives rise to jurisdiction over Acomarit. There is law demonstrating that where a vessel is directed by its charterer (here, Koch), the vessel's operator (here, Acomarit) cannot be said to have purposely directed its business activities toward a particular state. *Asarco,* 912 F.2d at 787; *Western Equities,* 956 F.Supp. at 1236–37.

Acomarit provides a letter dated December 15, 1998 from J. William Charrier, President of American Automar, Inc. to Giorgio P. Sulser of Acomarit (Exhibit A), demonstrating that Acomarit is not affiliated with Osprey Acomarit, Inc.[10]

A number of Saudi's allegations are a hodge podge of points that have nothing to do with Acomarit's contacts with Texas, either related to the incident or constituting any systematic and continuous contacts of Acomarit with Texas, and therefore these arguments do not require a reply.

■ Maintaining a passive Internet website, accessible to the world, does not give rise to general personal jurisdiction. *Jones v. Beech Aircraft Corp.,* 995 S.W.2d 767, 772 (Tex.App.—San Antonio 1999, no pet. h.)(passive websites making information available to interested parties do not provide basis for personal jurisdiction).[11]

9. This Court agrees. A foreign party's purchases in the United States do not justify jurisdiction. In *Helicopteros Nacionales,* 466 U.S. 408, 104 S.Ct. 1868 the defendant had purchased approximately 80% of its helicopter fleet, spare parts, and accessories from an American helicopter company. The Supreme Court held that "mere purchases, even if occurring at regular intervals, are not enough to warrant ... jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Id.* at 411, 104 S.Ct. 1868. *See also Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1362 n. 3 (5th Cir.1990) (purchases, even if they occur regularly, will not justify general jurisdiction). Nor are sales to the United States constitutionally sufficient to support general jurisdiction. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 772, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (sale of 15,000 magazines each month are not sufficient for general jurisdiction); *Nichols v. G.D. Searle Co.,* 991 F.2d 1195, 1198 (4th Cir.1993) (purchases combined with thirteen million dollars in sales is not enough); *Associated Transport Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.,* 197 F.3d 1070, 1075 (11th Cir.1999) (Proficol's nine sales to the United States during a four-year period were not constitutionally sufficient for general jurisdiction).

10. The letter shows that at the end American Automar, Inc. purchased Acomarit's shares in Osprey–Acomarit Ship Management and would be ending the relationship between the two.

11. This Court agrees. A majority of courts have held that something more than a website that acts as a worldwide advertisement, but not used to engage in significant interstate commerce, is required to trigger personal jurisdiction. *See also Mink v. AAAA Development LLC,* 190 F.3d 333, 336–37 (5th Cir.1999) (no personal jurisdiction where defendant operated website that was accessible by residents in the forum state but there was no evidence

Finally, for jurisdiction under Rule 4(k)(2), Acomarit asserts that Saudi's "laundry list" of "contacts" fails to satisfy due process requirements. Acomarit notes that the analysis in *Western Equities* of the insufficiency of Hanseatic Ltd.'s United States' contacts, shows they far exceed those imputed to Acomarit by Saudi. 956 F.Supp. at 1236–37.

In sum, Acomarit maintains that through its operation of the Marine Atlantic Acomarit never purposefully focused its business activities toward any particular state, nor did its incidental contact with Texas or Louisiana satisfy the requirements of due process for Rule 4(K)(2).

In a surreply, Saudi goes into detail about his "laundry list" of contacts. Because the Court agrees with Acomarit that the points he argues do not constitute sufficient minimum contacts to Texas or to the United States impose jurisdiction on Acomarit in the instant suit, it does not summarize Saudi's elaboration of the original contentions. Moreover, the Court grants Acomarit's motion to dismiss for lack of jurisdiction.

Accordingly for the reasons indicated above, the Court ORDERS the following:

(1) Marine and Machine's motions to dismiss (# 3 and 4) are MOOT;

(2) Acomarit's motion for leave (# 38) to file amended answer and to withdraw that portion of # 9 regarding improper service of process is GRANTED;

that the defendant conducted business over the Internet); *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 418–19 (9th Cir.1997); *Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 29 (2d Cir.1997) (no personal jurisdiction over an operator of a Missouri jazz club, who had a website for his club with a hyperlink to a New York club of the same name, but who did not significantly engage in interstate commerce and should not reasonably have expected his actions to have consequences in New

(3) Saudi's motion to strike is DENIED;

(4) Machine and Marine's motion to dismiss for lack of personal jurisdiction (# 20) is currently DENIED to allow for 30 days of written discovery regarding the identity of the successor in interest to Appleton Machine Company. The motion may then be reurged in its present form or as a motion for summary judgment, if appropriate;

(5) Acomarit's motion to dismiss for lack of personal jurisdiction (# 9) is GRANTED without prejudice; and

(6) Saudi's motion for leave to make further response after discovery (# 24) is GRANTED to the extent that he has thirty days for written discovery restricted to the issue of the identity of the successor in interest to Appleton Machine Company.

York); *GTE New Media Services, Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1347–49 (D.C.Cir.2000) (mere accessibility of defendants' websites does not establish minimum contacts with the forum); *Transcraft Corp. v. Doonan Trailer Corp.,* No. 97–C–4943, 1997 WL 733905, at *8–10 (N.D.Ill. Nov.17, 1997); *Hearst Corp. v. Goldberger,* No. 96–C–3260, 1997 WL 97097 (S.D.N.Y. Feb.26, 1997); *Harbuck v. Aramco, Inc.,* No. 99–C–1971, 1999 WL 999431 (E.D.Pa. Oct.21, 1999).