

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-17-2004

# Saudi v. Acomarit Maritimes

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1609

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Saudi v. Acomarit Maritimes" (2004). *2004 Decisions.* Paper 336.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/336

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1609

SHERIFF SAUDI, CAPTAIN,

Appellant

v.

ACOMARIT MARITIMES SERVICES, S.A.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 01-cv-04301
(Honorable Michael M. Baylson)

Argued April 22, 2004

Before: SCIRICA, *Chief Judge*, ROSENN and GREENBERG, *Circuit Judges*

(Filed: September 17, 2004)

JOE ALFRED IZEN, JR., ESQUIRE (Argued)
5222 Spruce Street
Bellaire, Texas 77401
        Attorney for Appellant


THOMAS R. NORK, ESQUIRE (Argued)
Bell, Ryniker, Letourneau & Nork
5847 San Felipe, Suite 4600
Houston, Texas 77057
        Attorney for Appellee

## OPINION OF THE COURT

SCIRICA, *Chief Judge.*

In this personal injury suit, petitioner appeals a Fed. R. Civ. P. 12(b)(6) dismissal by the District Court for lack of specific and general personal jurisdiction. We will affirm.

### I.

Plaintiff Sheriff Saudi was employed as a "mooring master" by American Eagle Tankers, a global maritime services company. As a mooring master, Saudi was assigned by his employer to moor supertankers or vessels on the high seas for the purpose of on-loading and off-loading petroleum and other cargo. Supertankers are often unable to enter American ports in the continental United States because the vessels' drafts exceed the depth of domestic ports.

Defendant Acomarit Maritimes Services, S.A. is an international ship management company. Acomarit is a Swiss company with headquarters in Bermuda. It neither engaged in business in Pennsylvania nor registered to do business in Pennsylvania. It does not maintain offices in Pennsylvania or an agent for service of process. It manages vessels, including supertankers, handling the vessels' crewing and provisioning, and ensuring that it arrives at its intended destination. Acomarit managed the Marine Atlantic, the supertanker involved in plaintiff's accident.

2

On May 17, 1999, Saudi left a vessel managed and operated by his employer, disembarked on to a tender vessel, and was placed aboard the Marine Atlantic supertanker. At the time, the Marine Atlantic was at anchor sixty miles southeast of Galveston, Texas, in international waters. The crane transferring Saudi to the tender vessel collapsed, causing him to fall fifty feet into the Gulf of Mexico. Saudi alleges he was lashed by the wire support cable of the crane and suffered extensive injuries including a broken arm, nerve damage, broken ribs, injured lungs, as well as lost wages and income.

## II.

Saudi filed an admiralty and maritime action in the United States District Court for the Southern District of Texas against the owner of the Marine Atlantic, the manufacturer and servicer of the allegedly defective crane, the owner of the crude oil being stored on the Marine Atlantic, and Acomarit. *Saudi v. Marine Atlantic,* 159 F. Supp. 2d 469 (S.D. Tex. 2000). He alleged claims of negligence, unseaworthy vessel, breach of warranty of merchantability, and strict liability in tort. *Id.* at 472. On February 1, 2000, the federal court in Texas granted without prejudice Acomarit's motion to dismiss for lack of personal jurisdiction. The court held Saudi failed to demonstrate sufficient minimum

3

contacts to Texas or to the United States to establish specific or general personal jurisdiction in Texas or general jurisdiction under Fed. R. Civ. P. 4(k)(2). *Id.* at 483.[1]

On May 16, 2001, Saudi filed a complaint in Pennsylvania state court, seeking actual and punitive damages against Acomarit for negligently failing to properly inspect and maintain the Marine Atlantic's crane, as well as negligently failing to make the Marine Atlantic safe for performing the operations for which he was hired. Saudi alleged jurisdiction was proper in Pennsylvania because Acomarit "employed" Thomas Garrett, a resident of Nazareth, Pennsylvania, who carried out Acomarit's business partly from Pennsylvania. Acomarit timely removed to federal court under 28 U.S.C. § 1332 and 28 U.S.C. § 1331, as the case involved admiralty and maritime jurisdiction under 28 U.S.C. § 1333.

Acomarit filed a motion to dismiss for lack of personal jurisdiction, which was denied with leave to refile by July 30, 2002. After a limited period of discovery, Acomarit filed a renewed motion to dismiss for lack of personal jurisdiction, which the District Court granted on January 31, 2003. 245 F. Supp. 2d at 667. The court found it

---

[1]Saudi has also filed actions in connection with his accident against various defendants in at least five federal jurisdictions, as well as in Texas and Wisconsin state courts. *See Saudi v. Northrop Grumman Corp.,* 273 F. Supp. 2d 101 (D.D.C. 2003) (products liability action); *Saudi v. S/T Marine Atlantic,* 2001 U.S. Dist. LEXIS 15155, 2001 WL 893871 (S.D. Tex. Feb. 20, 2001) (maritime negligence action); *Saudi v. Valmet-Appleton, Inc.,* 219 F.R.D. 128 (E.D. Wis. 2003) (products liability action); *Saudi v. V. Ship Switzerland, S.A.,* 2004 U.S. App. LEXIS 5923 (Mar. 31, 2004). The record indicates he has not been able to establish personal jurisdiction in any of the federal courts against Acomarit.

lacked general jurisdiction because Acomarit's contacts with Pennsylvania were sporadic at best, rather than continuous and systematic, *id.* at 669, 675; and that it lacked specific jurisdiction because Saudi did not allege that Acomarit purposefully directed its activities at the forum. The court found the Southern District of Texas's ruling on Fed. R. Civ. P. 4(k)(2) jurisdiction did not amount to claim preclusion, since a final adjudication on the merits (one of the requirements for claim preclusion) cannot result from a dismissal without prejudice for lack of personal jurisdiction. But the court rejected Rule 4(k)(2) jurisdiction on its merits, holding there was no nexus to the United States since the accident took place outside the territorial waters of the United States and had no effect inside the Untied States. *Id.* at 679-80. The court also rejected Saudi's motion to compel discovery, finding that Acomarit properly complied with Saudi's discovery requests. *Id.* at 681.

Saudi filed this timely appeal.

### III.

We review *de novo* the District Court's dismissal of a party for lack of personal jurisdiction, *Pinker v. Roche Holdings, Ltd*, 292 F.3d 361, 368 (3d Cir. 2002), but we review factual findings for clear error. *Pennzoil Products Co. v. Colelli & Assoc., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998). We review for abuse of discretion the District Court's discovery rulings. *Ins. Corp. of Ir. v. Companie Des Bauxites De Guinee,* 456 U.S. 694, 707 (1982). We have appellate jurisdiction under 28 U.S.C. § 1291.

5

# IV.

## A. Personal Jurisdiction in Pennsylvania

Saudi claims that the District Court erred in dismissing his suit for lack of personal jurisdiction. Fed. R. Civ. P. 4(e) allows a district court to assert personal jurisdiction over a non-resident to the extent allowed by the law of the forum state. *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir. 1984). Pennsylvania's long-arm statute provides that a court may exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b).

The Due Process Clause of the Fourteenth Amendment guarantees *in personam* jurisdiction may only be asserted over a nonresident defendant corporation if that defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quotation omitted). In assessing personal jurisdiction, the court must resolve the question based on the circumstances that the particular case presents. *Burger King v. Rudzewicz,* 471 U.S. 462, 485 (1985).

A court may exercise personal jurisdiction over a defendant if the defendant has specific or general contacts with the forum. Specific jurisdiction is appropriate only if the cause of action is related to or arises out of the defendant's forum-related activities, so

6

that it should reasonably expect to be haled into court. *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.,* 75 F.3d 147, 151 (3d Cir. 1996); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8. The defendant must have "purposefully directed his activities at residents of the forum" and the litigation must have resulted from alleged injuries that "'arise out of or relate[] to those activities.'" *BP Chem. Ltd. v. Formosa Chem. & Fibre Corp.,* 229 F.3d 254, 259 (3d Cir. 2000) (quoting *Burger King,* 471 U.S. at 472). This determination is both claim-specific and defendant-specific. *See Remick v. Manfredy,* 238 F.3d 248, 255-56 (3d Cir. 2001); *Rusk v. Savchuk,* 444 U.S. 320, 332 (1980).

If the cause of action does not "arise out of" the defendant foreign corporation's activities, a court may assert general jurisdiction if the corporation has "continuous and systematic" contacts with the forum state. 466 U.S. at 414-15. The standard for evaluating whether minimum contacts satisfy the test for general jurisdiction is more stringent than the test applied to questions of specific jurisdiction. *See Noonan v. Winston Co.,* 135 F.3d 85, 93 (1st Cir. 1998).

**1. Specific Jurisdiction**

The District Court found no basis to exercise specific personal jurisdiction over Acomarit, as Saudi presented no evidence demonstrating the underlying accident arose out of or related to Acomarit's contacts with or activities in Pennsylvania, such that Acomarit "should reasonably expect being haled into court" in Pennsylvania. 245 F.

7

Supp. 2d at 669 (quoting *Vetrotex,* 75 F.3d at 151). Saudi's claims against Acomarit relate only to an accident which occurred in the Gulf of Mexico, not in Pennsylvania or its territorial waters, and Saudi's alleged injury did not arise from any activities Acomarit "purposefully directed" at Pennsylvania. *Id.* We find no error.

### 2. General Jurisdiction

Saudi contends Acomarit had sufficient continuous and substantial contacts with Pennsylvania to establish general jurisdiction over Acomarit through its alleged employee Thomas Garrett. He claims that Osprey-Acomarit Ship Management employee Thomas Garrett was actually a "hidden" employee of Acomarit. According to Saudi, Acomarit hired Garrett as its port captain and entered into a joint venture with American Automar to form a company called Osprey-Acomarit Ship Management ("Osprey-Acomarit"), placed Garrett on that company's payroll, and hid the fact that Acomarit used a resident agent in the United States to carry out its business.

Even if Garrett was employed by Acomarit, Saudi has not shown sufficient contacts with Pennsylvania through Garrett's employment to warrant general jurisdiction over Acomarit. At most, Garrett traveled to and from Pennsylvania to Osprey-Acomarit's office in Maryland, where he had an office, sent some reports from his home in Pennsylvania, and made some telephone calls and some e-mails to and from Pennsylvania. There is no evidence that Acomarit conducted or solicited any business in Pennsylvania. With the exception of one vessel that paid a port call after the Saudi

8

accident, no Acomarit-managed vessels entered Pennsylvania waters. As such, these actions in Pennsylvania are not sufficient to establish "continuous and systematic" contacts with Pennsylvania. *See, e.g., BP Chem. Ltd.,* 229 F.3d at 262 (finding lack of continuous and systematic contacts where the defendant corporation has no personnel or facilities in the forum and has not advertised or solicited business in the forum); *Nichols v. Searle & Co.,* 991 F.2d 1195, 1200 (4th Cir. 1993) (finding insufficient "continuous and substantial activities" to justify general jurisdiction despite defendant's solicitation activities and employment of representatives in the forum state). The District Court did not abuse its discretion in finding lack of general personal jurisdiction over Acomarit in Pennsylvania.

## B. Fed. R. Civ. P. 4(k)(2)

### 1. Claim Preclusion and Issue Preclusion as Applied to the Rule 4(k)(2) Claim

The federal court in Texas dismissed Saudi's case without prejudice for lack of personal jurisdiction. Acomarit contends Saudi already litigated whether jurisdiction lies under Fed. R. Civ. P. 4(k)(2), so he should have been estopped from litigating the Rule 4(k)(2) claim before the District Court here. *See Saudi v. S/T Marine Atlantic,* 159 F. Supp. 2d 469, 479-83 (S.D. Tex. 2000). Two types of estoppel might be applicable: res judicata (claim preclusion) and collateral estoppel (issue preclusion).

Claim preclusion does not apply here. Three elements are required for claim preclusion to take effect: (1) a final judgment on the merits must have been rendered in a

9

prior suit; (2) the same parties or their privies are involved; and (3) the subsequent suit is based on the same cause of action as the original. *Lubrizol Corp. v. Exxon Corp,* 929 F.2d 960, 963 (3d Cir. 1991). The first prong has not been satisfied here. The federal court in Texas dismissed Saudi's suit for lack of personal jurisdiction, rather than issuing a judgment "on the merits." *See* Fed. R. Civ. P. 41(b); *Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances,* 723 F.2d 357, 360 (3d Cir. 1983). Furthermore, dismissals without prejudice are not considered to be "final judgments" as required for claim preclusion to take effect. *Trevino-Barton v. Pittsburgh Nat'l Bank,* 919 F.2d 874, 877-78 (3d Cir. 1990). As the District Court correctly concluded, claim preclusion does not bar Saudi from bringing the current Rule 4(k)(2) action.

It is possible that issue preclusion, might bar Saudi's Rule 4(k)(2) action.[2] Issue preclusion may apply to non-merits judgments which are conclusive as to those matters actually adjudged. *See Matosantos Commercial Corp. v. Applebee's Int'l, Inc.,* 245 F.3d 1203, 1209 (10th Cir. 2001) ("Although the dismissal for lack of personal jurisdiction in the Puerto Rico district court does not have res judicata effect, it does have collateral

---

[2]While counsel for Acomarit mainly focused its arguments on claim preclusion, their arguments appear to encompass issue preclusion as well. Counsel wrote in two separate briefs, "the Court correctly noted that the *issue* of Rule 4(k)(2) jurisdiction was 'previously resolved in the Texas litigation,'" App. 496, and "[t]he *issue* of Fed. R. Civ. P. 4(k)(2) jurisdiction has already been decided by the United States District Court for the Southern District of Texas and serves as res judicata to bar the re-litigation of that claim in this case" (emphasis added). Furthermore, counsel for Acomarit supported its contentions by citing to *Montana v. Supreme Court of the United States,* 440 U.S. 147, 153-55 (1979), a case addressing issue preclusion.

10

estoppel effect, preventing the relitigation of issues decided in the Puerto Rico district court"); *Okoro v. Bohman,* 164 F.3d 1059, 1063 (7th Cir. 1999). To establish issue preclusion, Acomarit must demonstrate: "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." *Burlington N. R.R. v. Hyundai Merchant Marine Co.,* 63 F.3d 1227, 1232 (3d Cir. 1995) (quoting *In re Braen,* 900 F.2d 621, 628-29 n.5 (3d Cir. 1990), *cert. denied,* 498 U.S. 1066 (1991)). It appears all four elements may have been met here. The Southern District of Texas decided the same Rule 4(k)(2) issue that Saudi now raises, namely whether Acomarit was subject to personal jurisdiction based upon nationwide contacts. *See Saudi,* 159 F.Supp.2d at 479-83, *and Saudi,* 245 F.Supp.2d at 676-681. This issue was litigated in the Texas action, the Texas court issued a valid judgment regarding Rule 4(k)(2) jurisdiction, and the issue of Rule 4(k)(2) jurisdiction was essential to the Texas judgment in determining whether there was personal jurisdiction over Acomarit. *See* 159 F.Supp.2d at 479-83. Nonetheless, the able District Court did not specifically address issue preclusion and so we are reluctant to rule on it here, especially since we believe plaintiff cannot prevail on the merits.

### 2. Rule 4(k)(2) Discussion on the Merits

Even if Saudi were permitted to bring a claim of personal jurisdiction under Fed. R. Civ. P. 4(k)(2), his claim would fail. Rule 4(k)(2) allows a federal court to exert

jurisdiction over a foreign defendant where the defendant lacks sufficient contacts in a single state to bring it within the reach of the state's long arm statute, yet has enough contacts with the United States as a whole to make jurisdiction constitutional. Thomas A. Coyne, *Federal Rules of Civil Procedure* II-25 (2d ed. 2002). The rule, enacted in December 1993, provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Therefore, to establish personal jurisdiction, there must be: (1) a claim arising under federal law; (2) the defendant must be beyond the jurisdictional reach of any state court of general jurisdiction; and (3) the defendant must have sufficient contacts with the United States so that the court's exercise of personal jurisdiction over the defendant comports with the due process requirements of the Constitution or other federal law. *See BP Chem. Ltd.,* 229 F.3d at 262; *United States v. Swiss American Bank, Ltd.,* 191 F.3d 30, 38 (1st Cir. 1999). The third prong of the test under Rule 4(k)(2)—minimum contacts—is similar to that of personal jurisdiction for a particular state: "general jurisdiction is available when the defendant's contacts unrelated to the litigation are 'continuous and systematic.'" *BP Chemicals,* 229 F.3d at 262 (citing *Helicopteros,* 466 U.S. at 416.[3]

---

[3]In *Leasco,* 468 F.2d 1326, a case decided before Rule 4(k)(2) was promulgated, the Court of Appeals for the Second Circuit stated:

(continued...)

12

Saudi claims he presented sufficient contacts with the United States, described by the Texas court as a "laundry list" but not elaborated on, *see* 159 F. Supp. 2d at 483, to ensure due process has been satisfied. He also argues his injury necessarily has an effect within the United States.

We do not believe that the "minimum contacts" presented by Saudi are sufficient to establish personal jurisdiction over Acomarit. As the District Court noted, Saudi presented even fewer contacts with the United States than the moving party in *BP Chemicals Ltd.,* 227 F.3d 254. In *BP Chemicals,* we found that a foreign defendant did not have sufficient contacts with the United States as a whole to justify the exercise of Rule 4(k)(2) jurisdiction. *Id.* at 258. Although the defendant Taiwanese corporation

---

[3](...continued)
> [T]he Restatement (Second) of Conflict of Laws, § 27, lists various bases for the exercise of judicial jurisdiction over an individual who is not present. Those relevant here are doing business in the state, § 35; doing an act in the state, § 36; and causing an effect in the state by an act done elsewhere, § 37.

468 F.2d at 1340. The Second Circuit chose three of the many factors under the Restatement which apply to the facts of that particular case.

*See also, e.g., United States v. Swiss American Bank, Ltd.,* 191 F.3d 30 (1st Cir. 1999) (performing a Rule 4(k)(2) minimum contacts test but not limiting its analysis to the three factors described above); *Chew v. Dietrich,* 143 F.3d 24 (2d Cir. 1998) (same); *World Tankers Carriers Corp.,* 99 F.3d 717 (5th Cir. 1996) (same); *Central States v. Reimer Express World Corp.,* 230 F.3d 934, 946 (7th Cir. 2000) (ERISA case); *Doe v. Unocal Corp.,* 27 F. Sup. 2d 1174 (C.D. Ca. 1998); aff'd, 248 F.3d 915 (9th Cir. 2001); *SEC v. Knowles,* 87 F.3d 413, 416-19 (10th Cir. 1996) (involving a contract dispute); *Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.,* 197 F.3d 1070, 1074-76 (11th Cir. 1999) (tort case involving communication of misinformation).

exported its products to the United States, held an ownership interest in a Delaware corporation, and entered into contracts requiring its personnel to travel to the United States for training, we held the cumulative effects of these contacts did not meet the requirements for general personal jurisdiction under Rule 4(k)(2). *Id.* at 258-59. In this case, there appear to be fewer jurisdictional connections than in *BP Chemicals*. Saudi's accident occurred outside the United States, and Saudi presents no evidence that Acomarit solicited or transacted business in the United States. The District Court did not err in finding lack of sufficient contacts with the United States.

## C. Motion to Compel Discovery and Impose Sanctions

Finally, Saudi alleges Acomarit abused the discovery process and blocked discovery of jurisdictional facts. He alleges Acomarit committed unauthorized redactions, submitted meritless objections to requests for telephone bills and financial records showing reimbursements in Pennsylvania, and made unsupported claims that documents were destroyed and cannot be produced. Saudi claims that he is entitled to a finding of personal jurisdiction based on this alleged willful obstruction of discovery. The District Court found no abuse of discovery. It noted, "Despite [Saudi's] insistence that Acomarit has not produced documents in its possession, [Saudi] has not produced any evidence to prove that Acomarit is withholding documents." *Saudi,* 245 F. Supp. at 681. We see no abuse of discretion.

14

## V.

For the reasons stated above, we will affirm the judgment of the District Court.

_____